Loren S. Scott, OSB #024502
lscott@scott-law-group.com
THE SCOTT LAW GROUP
88 East Broadway
Eugene, OR 97401
Telephone: 541-868-8005
Facsimile: 541-868-8004
        Of Attorneys for Debtor in Possession

## United States Bankruptcy Court
## for the District of Oregon

In re                                                     Case No.  11-60920-fra11

        Eugene Pipe, LLC

                        Debtor                  Chapter 11

## DEBTOR'S DISCLOSURE STATEMENT DATED JULY 21, 2011

## I.      INTRODUCTION

        This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of Eugene Pipe, LLC (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan of Liquidation (the "Plan") filed by Debtor on July 21, 2011.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  ***Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.***

        The proposed distributions under the Plan are discussed at pages 6 through 11 of this Disclosure Statement.  General unsecured creditors are classified in Class 7, and will receive a distribution of 10% of the allowed amount of their claims, not to exceed $400,000, to be distributed as one lump sum distribution immediately upon closing of a sale of substantially all of the assets of Debtor as set forth in the Plan and further described herein.

### A.      Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in a Chapter 7 liquidation, and

DEBTOR'S DISCLOSURE STATEMENT DATED JULY 21, 2011 - Page 1 of 17

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**1.     *Time and Place of the Hearing to Confirm the Plan***

The hearing at which the Court will determine whether to confirm the Plan will take place on _____ at _____ before the Honorable Frank R. Alley III in Courtroom #6 of the US Bankruptcy Court located at 405 E. 8th Avenue, Eugene, OR 97401.

**2.     *Deadline For Voting to Accept or Reject the Plan***

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to **Loren Scott, 497 Oakway Road, Suite 245, Eugene, OR 97401**. See Section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

**3.     *Deadline For Objecting to Confirmation of the Plan***

Objections to the confirmation of the Plan must be filed with the Court and served upon Debtor by _____.

**4.     *Identity of Person to Contact for More Information***

If you want additional information about the Plan, you should contact Loren Scott, 497 Oakway Road, Suite 245, Eugene, OR 97401, (541) 868-8005, lscott@scott-law-group.com.

**C.     Disclaimer**

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.     BACKGROUND

**A.     Description and History of the Debtor's Business**

The Debtor is a limited liability company that has been engaged in the business of manufacturing and selling PVC pipe and related products since 2008. Its key employees have decades of industry experience. Debtor currently employs approximately 55 persons at its manufacturing plant

in Eugene, Oregon.  Debtor sells its product to customers locally and throughout the Pacific Northwest.

**B.    Insiders of the Debtor**

The following lists the insiders of Debtor as defined in §101(31) of the  United States Bankruptcy Code (the "Code") and their relationship to the Debtor:

| Name | Relationship | Compensation Paid by Debtor or affiliate to Insider during 24 months prior to case commencement | Compensation Paid by Debtor or affiliate to Insider from March 2011 to present |
| --- | --- | --- | --- |
| MICA Investments, LLC (Owner: Norman M. Stickel) | Manager/ Director | $76,219.50* | $21,312.09 |
| Sherman 4132, LLC (Owner: Jeff Sherman) | Manager/ Director | $78,718.50* | $21,312.09 |
| Andy Storment | Director | $0 | $0 |
| William Chambers | Director | $0 | $0 |

\*  Represents total compensation paid from March 2009 through February 2011.  Figure includes waived compensation during 2009 and reduced compensation during 2010 and 2011.

**C.    Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were:

MICA Investments, LLC, by and through Norman M. Stickel
Sherman 4132, LLC, by and through Jeff Sherman
Andy Storment
William Chambers

These persons have managed the Debtor during the Debtor's chapter 11 case.  After the effective date of the order confirming the Plan and the Closing of the sale contemplated therein, Debtor shall be dissolved.  Thus, there will only be a brief period of post-confirmation management of the Debtor, which will be by the above individuals, until the Closing of the sale of all of the assets of the Debtor.

**D.    Events Leading to Chapter 11 Filing**

Debtor started its business just before the economy was beginning to decline.   As part of its business plan, Debtor took out loans to expand operations, including a loan from the US Small Business Administration ("SBA") and West Coast Bank.  Unfortunately, demand for its product fell off sharply due to the collapse of many businesses in the construction industry.  Debtor ceased its expansion plans and focused on improving the business at its current size.  Because its business plan

was based on a larger production model, Debtor could not sell enough product to generate enough income to service all of its debts. When it became clear that Debtor could not restructure its loan obligations with existing lenders, Debtor sought out and obtained financing from a group of private investors, which formed the group, EP Lenders, LLC. Approximately 69% of the membership interests in EP Lenders, LLC is owned by persons or entities who own membership interests in Debtor. EP Lenders, LLC agreed to lend Debtor $3.1 million to pay down one of the loans to West Coast Bank and provide additional operating capital. As part of that transaction, EP Lenders, LLC obtained an agreement from the SBA that it would provide a limited subordination of its lien position in Debtor's equipment. When the remaining balance of the loan to West Coast Bank came due, Debtor was unable to pay the loan off and was unsuccessful in negotiating a further extension or other acceptable terms. Another group of investors, consisting of some of the members of EP Lenders, LLC and Debtor [see Exhibit 2 to Motion to Obtain Post-Petition financing], EP Lenders II, LLC was formed to purchase the remaining West Coast Bank loan. Despite these financing efforts, Debtor was unable to service its existing debt load and filed for relief under Chapter 11.

### E. Significant Events During the Bankruptcy Case

The following significant events have occurred since the filing of this Case:

- Court approval of orders approving debtor in possession financing and use of cash collateral.
- Appointment of a creditors' committee.
- Court approval of employment of the following professional persons: Loren S. Scott and Muhlheim Boyd (now, The Scott Law Group) as attorney for the Debtor; Donald Churnside and Gaydos Churnside and Balthrop PC as attorney for creditors' committee; Roger Robb and RS2 Group LLC as financial consultant for Debtor; John C. Kruzinski and Appraisal Resource PC as appraiser for Debtor; and Warren Barnes and Kernutt Stokes as accountant for Debtor.

### F. Projected Recovery of Avoidable Transfers

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions. The Debtor believes that the only potential avoidance action relates to preferences for repayment of insider business loans. Based on the additional cash being made available to unsecured creditors by the purchaser of the assets, the Debtor does not intend to pursue recovery of these payments.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B, which includes a copy of the summary page from an appraisal of the Debtor's equipment performed by Appraisal Resources, PC.

The Debtor's most recent financial statements issued before bankruptcy are set forth in Exhibit C.

The June 2011 Monthly Operating Report is set forth in Exhibit D.

## I.    Decision to Liquidate Assets

The Debtor originally filed this case intending to restructure its existing debt obligations through a plan of reorganization.  As the case has progressed it has become apparent that the Debtor will not be able to propose a plan to pay all debts in full over any reasonable period of time.  That conclusion is based on a comparison of the projections included with the cash collateral and DIP financing motions and the monthly operating reports filed in this case.  The Debtor has performed in accordance with its projections, but those projections fall short of allowing any significant additional payments to unsecured creditors.  In addition, the post-petition DIP financing from EP Lenders II, LLC is due in February 2011.  While the Debtor projects having sufficient cash at that time to make that payment, such payment would not leave the Debtor with sufficient operating capital.  Finally, the Debtor has been informed by EP Lenders, LLC and EP Lenders II, LLC that they will not support a plan of reorganization that repays debts in full over an extended period of time because those creditors believe such a plan would not be feasible and would not leave the company in a position in which it can ultimately survive.  Both lenders have indicated that they would oppose such a reorganization plan and would likely make elections under 11 U.S.C. §1111(b) in response to such a plan.  The Debtor does not believe that it could confirm a plan over the objections of these two creditors.  As a result, it determined that liquidation provided the best prospect for the continued long term operation of this business and payment of any recovery to the unsecured creditors.

## III.    SUMMARY OF THE PLAN OF LIQUIDATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.    What is the Purpose of the Plan of Liquidation?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B.    Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1.    *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $700,258 | Paid in full on the effective date of the Plan, or according to terms of obligation if laterv |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $237,532 | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| Professional Fees, as approved by the Court, for Muhlheim Boyd and The Scott Law Group, attorneys for the Debtor. | $50,000 | Paid in full on the effective date of the Plan or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Professional Fees, as approved by the Court, for RS2 Group LLC, financial consultant for the Debtor. | $5,000 | Paid in full on the effective date of the Plan or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Professional Fees, as approved by the Court, for Kernutt Stokes, accountants for the Debtor. | $20,000 | Paid in full on the effective date of the Plan or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Professional Fees, as approved by the Court, for Appraisal Resource PC, appraiser for the Debtor. | $5,500 | Paid in full on the effective date of the Plan or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Professional Fees, as approved by the Court, for Gaydos Churnside & Balthrop PC, attorneys for the Unsecured Creditors' Committee. | $20,000 | Paid in full on the effective date of the Plan or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0 | Paid in full on the effective date of the Plan |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the effective date of the Plan |
| TOTAL | $1,038,290 | |

### 2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description (name and type of tax) | Estimated Amount Owed | Treatment |
|---|---|---|
| Washington State Dept Revenue | $3,165 | PAID IN FULL ON EFFECTIVE DATE |
| California Franchise Tax | $6,600 | PAID IN FULL ON EFFECTIVE DATE |

### C. **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| Class | Description | Insider Status | Impairment | Treatment | |
|---|---|---|---|---|---|
| 1 | Secured claim of EP Lenders, LLC<br><br>Collateral description = all assets including but not limited to equipment, inventory, accounts | Insider | Impaired | Sale Terms | ASSUMED by Proposed Buyer as part of Sale through Plan on following terms<br><br>Post-petition interest and |

| | | | | | |
|---|---|---|---|---|---|
| | receivables, and general intangibles | | | | attorney fees to be included |
| | Est. Collateral Value = $3,618,397 | | | Monthly Payment | = Interest only |
| | Priority of lien = second as to equipment and first as to all other assets | | | Pmts Begin | = Within 5 business days of Closing |
| | Est. total claim = $3,100,000 | | | Pmts End & Balloon | = 2 years from Closing at which time remaining balance of unpaid principal and accrued interest is immediately due and payable |
| | | | | Interest rate | = 6 % |
| | | | | Treatment of Lien | = Retained |
| 2 | Secured Pre-petition Claim of EP Lenders II LLC

Collateral description = Equipment

Est. Collateral Value = $ 510,000

Priority of lien = first

Est. total claim = $754,302.89 | Insider | Impaired | Sale Terms | ASSUMED by Proposed Buyer (who is also the Class 2 and the Class 3 creditor) in the amount of $510,000 on terms acceptable to Proposed Buyer; remainder of claim to be treated as Class 7 claim |
| | | | | | |

| 3 | Secured Post-Petition Claim of EP Lenders II LLC<br><br>Collateral description = Accounts receivables<br><br>Est. Collateral Value = $2,614,018<br><br>Priority of lien = first<br><br>Est. Total Claim = $500,000 | Insider | Impaired | Sale Terms | ASSUMED by Proposed Buyer (who is also the Class 2 and the Class 3 creditor) on terms acceptable to Proposed Buyer; interest and attorney fees to be included |
|---|---|---|---|---|---|
| 4 | Secured Claim of Hoverter Engineering, Inc.<br><br>Collateral description = belling equipment<br><br>Est. Collateral Value = $80,000<br><br>Priority of lien = first<br><br>Est. Total Claim = $13,333.35 | Not Insider | Unimpaired | Sale Terms<br><br><br><br>Pmts End | BEING PAID pursuant to Final Order Authorizing Use of Cash Collateral (dated 3/29/2011)<br><br>= August 2011 |
| 5 | Secured Claim of NMHG Financial Services, Inc.<br><br>Collateral description = forklift<br><br>Est. Collateral Value = $15,000 | Not Insider | Impaired | Sale Terms | TO BE ASSUMED BY PROPOSED BUYER on same terms as existing contract with Debtor (which provides for payments ending in |

| | | | | |
|---|---|---|---|---|
| | Priority of lien = first<br><br>Est. Total Claim = $9,575.71 | | | approximately August 2012) |
| 6 | Secured Claim of US Small Business Administration<br><br>Collateral description = equipment<br><br>Est. Collateral Value = $0.00 (based on debtor's appraisal of equipment and creditor's third lien position)<br><br>Priority of lien = third<br><br>Est. Total Claim = $1,612,018 | Not insider | Impaired | Debtor believes the claim of the Class 6 creditor is wholly unsecured and the claim will therefore be treated as Class 7 claim; Debtor likely will request a valuation hearing prior to Confirmation because the Class 6 creditor has obtained an appraisal of its collateral that is different from Debtor's and which shows the claim as partially secured |

      2.     *Classes of Priority Unsecured Claims*

There are NO priority claims of the types listed in §§ 507(a)(1), (4), (5), (6), and (7) of the Code

      3.     *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of the general unsecured claims against the Debtor.

| Class # | Description | Impairment | Treatment | |
|---|---|---|---|---|
| 7 | General Unsecured Class | Impaired | Sale Terms | Lump Sum payment of 10% of the allowed amount of their claims, not to exceed $400,000 |
| | | | Pmt Due | = Within 5 business days of Closing |
| | | | Estimated percent of claim paid | = 10% |

4. *Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company ("LLC"), the equity interest holders are the members. The following chart sets forth the Plan's proposed treatment of the equity interest holders in Class 8.

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 8 | Equity interest holders | Impaired | Will not receive any payments from sale of assets of Debtor; Some of the equity interest holders also hold membership interests in Proposed Buyer |

**D. Means of Implementing the Plan**

1. *Source of Payments*

Payments and distributions under the Plan will be funded by a sale of the assets of the Debtor to EP Lenders II, LLC, who is "Proposed Buyer" herein and in the Plan and is also the Class 2 and Class 3 creditor. Proposed Buyer will pay a total purchase price of $4,510,000. A letter of intent describing some of the terms of the offer is attached hereto as Exhibit F. An unexecuted copy of the Purchase Agreement will be ready prior to any hearing on this Disclosure Statement and will be filed and attached hereto as Exhibit G. If the court orders competitive bidding, the Purchase Agreement sets forth procedures for how such bidding will be handled and provides that Proposed Buyer will receive a breakup fee of $50,000 if Proposed Buyer is not the winning bidder.

2.  *Post-confirmation Management*

There will not be significant post-confirmation management of the Debtor.  The Plan provides that the sale to Proposed Buyer must close within 30 days of Confirmation, at which point, Debtor will be dissolved.  The Plan also provides that, if the sale does not close, Debtor will request a hearing with the Court to discuss what alternatives may be available at that time.

## E.  Risk Factors

The proposed Plan has the following risks:

*   Failure of sale to close – This is a risk in any sale.  However, the Proposed Buyer has a past history with Debtor, many of its members are intimately involved in Debtor and/or have financial interests in Debtor and therefore there is a big incentive to close this deal.

## F.  Executory Contracts and Unexpired Leases

The Plan, in Section 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Any and all such leases and contracts will be assigned or transferred to and assumed by Proposed Buyer.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Section 6.01 will be rejected under the Plan and subject to renegotiation with Proposed Buyer.  Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

***The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is*** thirty (30) calendar days after the date of the order confirming this Plan.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

## G.  Tax Consequences of Plan

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

The following discussion summarizes certain federal income tax implications to the Estate of the transactions proposed in the Second Modified Plan.  This discussion does not purport to be a detailed explanation of all federal income tax implications that may occur to the Debtor under the Second Modified Plan.  Further, the discussion does not address the state and local income tax implication to the Debtor.  The discussion is based upon the Internal Revenue Code of 1986, as amended (the "Code"), Treasury Regulations promulgated thereunder, and judicial and other

administrative interpretations as of the date hereof. Any change in the foregoing authorities may be applied retroactively in a manner that could significantly impact the analysis herein. No ruling will be sought from the Internal Revenue Service (the "IRS") with respect to any tax aspects of the Second Modified Plan. Consequently, there can be no assurance that the IRS will accept the tax implications described herein. Furthermore, no opinion of counsel has either been sought or obtained with respect to any tax aspect of the Second Modified Plan.

THIS ANALYSIS DOES NOT ADDRESS THE TAX IMPLICATIONS OF THE PLAN TO ANY SPECIFIC CREDITOR. Substantial differences in the tax implications are likely to be encountered by the creditors because of the difference in the nature of their Claims, their taxpayer status, their method of accounting, and the impact of prior actions they may have taken with respect to their Claims.

The Estate will have taxable gain for money received from the sale of Estate Assets to the extent that it exceeds basis. In general, creditors will obtain an allowance for a bad debt deduction to the extent their debts will not be paid. This bad debt deduction, however, is reported as a short-term capital loss, limited to $3,000 per year or the capital gains amount, whichever is greater, for creditors who are not in the business of lending money. For creditors who conduct their finances on an accrual basis, this will have the effect of reducing their taxable income. For creditors who conduct their finances on a cash basis, this will not have the effect of reducing their taxable income, as they only receive income from receivables when cash is collected.

As discussed above, the effect of the Plan on specific creditors will depend on specific financial information relative to such creditor that is unknown to the Debtors. As a result, the tax implications to specific creditors cannot be completely described here.

THE OPINIONS SET FORTH IN THIS DISCLOSURE STATEMENT ARE STRICTLY THOSE OF THE DEBTORS AND/OR THEIR TAX ADVISORS. THE PLAN MAY HAVE TAX CONSEQUENCES TO CREDITORS. TAXING AUTHORITIES ARE NOT BOUND BY THIS DISCLOSURE STATEMENT OR THE DEBTORS' OPINION REGARDING TAX CONSEQUENCES OF THE PLAN. CREDITORS ARE STRONGLY ENCOURAGED TO SEEK INDEPENDENT PROFESSIONAL ADVICE REGARDING TAX CONSEQUENCES.

## IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A. Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that Classes 1 through 3 and Classes 5 through 7 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.  The Plan Proponent believes that Class 4 is unimpaired and that holders of claims in that class, therefore, do not have the right to vote to accept or reject the Plan.

1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

**The deadline for filing a proof of claim in this case was July 11, 2011.**

2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3. *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

DEBTOR'S DISCLOSURE STATEMENT DATED JULY 21, 2011 - Page 14 of 17

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

    4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed in Section B(2).

    1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

    2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a cramdown confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit E. As shown therein, unsecured creditors would receive nothing in a chapter 7 liquidation.

**D.      Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1.      *Ability to Initially Fund Plan*

The Debtor's Plan will be funded by the Proposed Buyer's partial release of its lien on accounts and contribution of new cash, as outlined in detail in the Plan. The Debtor's cash flow projections indicate that there will be sufficient cash on hand to make the required payment to unsecured creditors at Closing.

2.      *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. This Plan is a liquidating Plan. Debtor will make Plan payments in one lump sum within 5 days of Closing of the sale of all of its assets to Proposed Buyer. If the sale does not close, Debtor will request a status conference with the Court to determine what alternatives may be available.

**V.      EFFECT OF CONFIRMATION OF PLAN**

**A**.      **NO DISCHARGE OF DEBTOR**

No Discharge. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

**B**.      **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing. The Plan will be substantially consummated on the Closing Date of the sale.

/ / / /

/ / / /

## C.     Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

THE SCOTT LAW GROUP

By:     /s/ Loren S. Scott
        Loren S. Scott, OSB #024502
            Of Attorneys for Debtor

Loren S. Scott, OSB #024502
lscott@scott-law-group.com
THE SCOTT LAW GROUP
88 East Broadway
Eugene, OR 97401
Telephone: 541-868-8005
Facsimile: 541-868-8004
        Of Attorneys for Debtor in Possession


# United States Bankruptcy Court
### for the District of Oregon

In re                                                           Case No. 11-60920-fra11

        Eugene Pipe, LLC
                            Debtor                    Chapter 11


### DEBTOR'S PLAN OF LIQUIDATION, DATED JULY 21, 2011

### ARTICLE I
### SUMMARY

        This Plan of Liquidation (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Eugene Pipe, LLC (the "Debtor") from a sale of substantially all of the Debtor's assets.

        This Plan provides for 6 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 10 cents on the dollar. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan.

        All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 1 of 10

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01   <u>Class 1</u>.          The claim of EP Lenders, LLC, to the extent allowed as a secured claim under § 506 of the Code.

2.02   <u>Class 2</u>.          The pre-petition claim of EP Lenders II, LLC, to the extent allowed as a secured claim under § 506 of the Code.

2.03   <u>Class 3</u>.          The post-petition claim of EP Lenders II, LLC, to the extent allowed as a secured claim pursuant to the Order Approving Post-Petition Financing of the Debtor by the Bankruptcy Court dated March 29, 2011.

2.04   <u>Class 4</u>.          The claim of Hoverter Engineering, Inc. to the extent allowed as a secured claim under § 506 of the Code.

2.05   <u>Class 5</u>.          The claim of NMHG Financial Services, Inc. to the extent allowed as a secured claim under § 506 of the Code.

2.06   <u>Class 6</u>.          The claim of US Small Business Administration to the extent allowed as a secured claim under § 506 of the Code.

2.07   <u>Class 7</u>.          All general unsecured claims allowed under § 502 of the Code.

2.08   <u>Class 8</u> .         Equity interests of the Debtor.

# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01   <u>Unclassified Claims</u>.   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02   <u>Administrative Expense Claims</u>.    Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03   <u>Priority Tax Claims</u>.    Each holder of a priority tax claim will be paid in full on or before the Effective Date of the Plan.

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 2 of 10

3.04    <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) (US Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any US Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

Claims will be treated as follows:

Class 1 – Secured Claim of EP Lenders, LLC

This class is impaired. The claim of the Class 1 creditor in the approximate amount of $3,100,000 is secured by a blanket lien on all assets of the Debtor, consisting of a second position lien in Debtor's equipment (limited to the amount of $1,678,905 pursuant to a pre-petition subordination agreement with the SBA) and a first position lien on all other pre-petition assets (subject to the post-petition subordination agreement with EP Lenders II, LLC which was approved by order of the Bankruptcy Court dated March 25, 2011). Based on the Debtor's liquidation analysis, attached to the Disclosure Statement as Exhibit E, Debtor believes the claim of the Class 1 creditor is over-secured. The claim of the Class 1 creditor, plus post-petition interest and attorney's fees, will be assumed and paid by the buyer of the assets of the Debtor as further described herein.

Class 2 – Secured Pre-Petition Claim of EP Lenders II, LLC

This class is impaired. The claim of the Class 2 creditor of $726,000 is secured by a first position lien in all of Debtor's equipment. Based on the Debtor's liquidation analysis and an appraisal of the equipment, Debtor believes the claim of the Class 2 creditor is under-secured. Therefore, the claim will be bifurcated into a secured and an unsecured claim. The secured claim of $510,000 (representing the liquidation value of Debtor's equipment) will be satisfied by the credit bid of the holder of the Class 2 claim at closing of the sale of the assets of the Debtor as further described herein. The unsecured portion of the claim will be treated as a Class 7 (general unsecured) claim.

Class 3 – Secured Post-Petition Claim of EP Lenders II, LLC

This class is impaired. The claim of the Class 3 creditor of $500,000 is secured by a first position lien in all of Debtor's post-petition accounts receivables. The claim was approved by the Order Approving Post-Petition Financing of the Debtor entered by the Bankruptcy Court on March 29, 2011. Pursuant to such order, the Class 3 creditor is entitled to post-petition interest and attorney fees on its claim. The class 3 claim will be satisfied by the credit bid of the holder of the Class 3 claim at closing of the sale of the assets of the Debtor as further described herein.

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 3 of 10

Class 4 – Secured Claim of Hoverter Engineering, Inc

This class is unimpaired. The claim of the Class 4 creditor has been and will continue to be paid according to its contract with Debtor, which payments were approved pursuant to the Final Order Allowing Use of Cash Collateral entered by the Bankruptcy Court on March 29, 2011. Debtor anticipates the claim of the Class 4 creditor will be paid in full prior to Confirmation.

Class 5 – Secured Claim of NMHG Financial Services, Inc.

This class is impaired. The claim of the Class 5 creditor has been and will continue to be paid according to its contract with Debtor, which payments were approved pursuant to the Final Order Allowing Use of Cash Collateral entered by the Bankruptcy Court on March 29, 2011, until the sale of the Debtor's assets closes as further described herein. At closing, the contract with the Class 5 creditor will be assigned to the purchaser of the assets who will continue to make payments according to the terms of the contract until the debt is paid in full, which the Debtor estimates will be approximately August 2012.

Class 6 – Secured Claim of US Small Business Administration

This class is impaired. The claim of the Class 6 creditor of approximately $1,612,018 is secured by a third position lien on equipment. Debtor believes the claim of the Class 6 creditor is wholly unsecured. Therefore, the claim of the Class 6 creditor will be treated as a Class 7 (general unsecured) claim.

Class 7 – General Unsecured Claims

This class is impaired. The claims of the Class 7 creditors consist of unsecured claims and unsecured portions of under-secured (deficiency) claims of the Class 2 and Class 6 creditors. Based on the Debtor's liquidation analysis, the Class 7 creditors would receive nothing in a chapter 7 bankruptcy case. Under this Plan, Debtor will pay Class 7 creditors 10% of the allowed amount of their claims, not to exceed $400,000, from proceeds of a sale of substantially all of the assets of the Debtor as further described herein.

Class 8 – Equity Interest Holders

This claim is impaired. The holders of Class 8 claims will not receive anything under this Plan.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claims.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 4 of 10

filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.  There are <u>no</u> disputed claims in this case, other than the dispute over the secured status of the claim of the U.S. Small Business Administration, which will be addressed as part of this Plan, and the dispute over the secured status and amount of the claim filed by Wildish Industrial Development, which the Debtor intends to address in the claims process.

**ARTICLE VI**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

      6.01   <u>Assumed Executory Contracts and Unexpired Leases</u>.

      (a)   The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as provided in Article VII and assigns them to the buyer of the assets as further described herein:

> De Lage Landen Financial Services – forklift lease (expires March 6, 2014)

> Wildish Industrial Development –
>     \*\* Manufacturing Building Lease (expires March 1, 2014)
>     \*\* Office/Warehouse Building Lease (expires March 1, 2013)

> Electrorep, Inc – sales agent contract

> Joslin Sales, Ltd – sales agent contract

> Normco Sales, LLC – sales agent contract

> Pacific Western Agencies, Inc. – sales agent contract

> Formosa Plastics Corporation - Sales Contract

> Columbia River Carbonates - Supply Agreement

      (b)   The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) calendar days after the date of the order confirming this Plan.

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 5 of 10

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Debtor proposes a private sale of all of its assets to the investor group, EP Lenders II, Inc. ("Proposed Buyer" herein) which group has previously loaned funds to Debtor, secured by assets of the Debtor and which provided court-approved post-petition financing to the Debtor. The Proposed Buyer has indicated, by a letter of intent, that it would agree to purchase substantially all of Debtor's assets as described further below. A copy of the letter is attached to the Disclosure Statement as Exhibit F. Debtor anticipates that a Purchase Agreement will be drafted and available prior to any hearing on the Disclosure Statement in this case.

Definitions.

"Closing" as used herein means the date on which all of the following have occurred: all contingencies listed in this section and in the Purchase Agreement have been met, funds have been received by Debtor for distribution to the Class 7 creditors, and any and all necessary documents have been executed and, if required to be recorded, have been recorded.

"Proposed Buyer" means EP Lenders II, LLC, who is also the Class 2 and the Class 3 creditor herein.

"Purchase Agreement" as used herein means the unexecuted copy of an agreement between Proposed Buyer and Debtor attached as Exhibit G to the Disclosure Statement and hereby incorporated into and made a part of this Plan.

Private Sale; No Competitive Bidding; Purchase Agreement Exhibit. The Debtor will not solicit competing offers for purchase of the assets. Debtor has valued the assets through consultation with industry persons familiar with its inventory and through a formal appraisal of its equipment and believes the purchase price offered by Proposed Buyer is appropriate given those values. The Purchase Agreement with Proposed Buyer will set forth terms that will govern should the Bankruptcy Court, upon motion or otherwise, order competitive bidding. An unexecuted copy of the the Purchase Agreement will be attached as Exhibit G to the Disclosure Statement and provided to creditors and the Court prior to any hearing on the Disclosure Statement. Exhibit G of the Disclosure Statement is hereby incorporated by this reference and made a part of this Plan.

Terms of Sale in Purchase Agreement. Sale to Proposed Buyer is contingent on execution of and approval of the creditors and Bankruptcy Court of the Purchase Agreement with the terms specified herein, without material alteration, including the following:

Purchase Price; Assumption of Debt; Credit Bidding. The total purchase price for all of the assets of Debtor, including but not limited to, Debtor's equipment, inventory, accounts, accounts receivables, and general intangibles (an itemization of which will be provided in the Purchase Agreement with the Proposed Buyer), is $4,510,000 as follows:

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 6 of 10

Assumption of liability to pay the claim of the Class 1 creditor (EP Lenders, LLC) of $3,100,000 provided that the Class 1 creditor will agree to the following: extension of the maturity date to a date that is 2 years from the date of closing, 6% interest rate, monthly payments of interest only during the 2 year period with a balloon payment due of the outstanding principal and interest at maturity;

Credit bid the pre and post-petition claims of EP Lenders II, LLC, who is the Class 2 and the Class 3 creditor and the Proposed Buyer herein, in the total amount of $1,010,000;

Cash in the amount of $400,000 (comprised of available cash of the Debtor in which Proposed Buyer has a lien and additional cash contributions from Proposed Buyer not to exceed $205,000) to allow payment to unsecured creditors in the approximate amount of 10% of their allowed claims;

Assumption of liability to pay the claim of the Class 5 creditor (NMHG Financial) consisting of Debtor's contract to purchase a forklift

Closing. Closing shall occur within 30 days of Confirmation.

Representations, Warranties. Customary representations, warranties, and covenants, conditions, and indemnification commonly undertaken by buyers and sellers in transactions of this size and type.

Assignment of Right to Purchase Equipment. Proposed Buyer shall have the right, but not the obligation to, assign its right to purchase the equipment of the Debtor to a third party, provided such third party agrees to lease such equipment to the Proposed Buyer. Debtor consents to such assignment.

Continued Business Operations through Closing and Transition of Business to Proposed Buyer. Debtor's continued use of its best efforts to conduct its business in a reasonable and prudent manner in accordance with past practices, to preserve its existing business organizations and relationships with its employees, customers, suppliers, and others with whom it has a business relationship, to preserve and protect its properties, and to conduct its business in compliance with all applicable laws and regulations;

Non-competition/Non-solicitation Agreements. Execution of a non-competition/non-solicitation agreement reasonably acceptable to the parties by Debtor and its members;

Bidding Procedures if Competitive Bidding is Ordered by the Court. If the Court orders competitive bidding as to the sale of Debtor's assets, such bidding shall be

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 7 of 10

governed by the procedures set forth in the Proposed Buyer, including but not limited to the following: Proposed Buyer will be pre-qualified and designated as the Initial Bidder and if Proposed Buyer is not the winning bidder, the winning bidder (and purchaser of the assets) must pay, in addition to the purchase price, a breakup fee to Proposed Buyer in the amount of $50,000; and

Other Conditions.  Successful negotiation of Proposed Buyer with Debtor's current landlord for use of the business premises on terms and conditions satisfactory to Proposed Buyer in its sole discretion.

Sale to Insider.  Approximately 70% of the members of the Proposed Buyer also have membership interests in the Debtor.

Debtor's Existing Employees.  Proposed Buyer intends to re-employ existing employees and retain all existing employee benefit plans.

Status of Liens in the Assets to be Sold.  The assets will be sold free and clear of all liens, except to the extent such liens secured debts which are assigned to and assumed by Proposed Buyer, as described herein and in the Purchase Agreement.

Assumption, Assignment, and Rejection of Executory Contracts and Unexpired Leases. Debtor has listed specified leases and executory contracts it will assume in Section 6.01 above as of the Effective Date of this Plan.  Proposed Buyer will execute any and all necessary documents to permit it to assume or be assigned those leases and contracts.

Interim Arrangements with Proposed Buyer. As set forth above, Proposed Buyer requires that the Debtor continue to use its best efforts to conduct its business in a reasonable and prudent manner in accordance with past practices, to preserve its existing business organizations and relationships with its employees, customers, suppliers, and others with whom it has a business relationship, to preserve and protect its properties, and to conduct its business in compliance with all applicable laws and regulations at all times prior to Closing.

Use of Proceeds.  At closing, Debtor will distribute funds to the Class 7 creditors, pro-rata, in the approximate amount of 10% of the allowed amount of their claims, not to exceed $400,000.  The Proposed Buyer shall retain all other cash and cash equivalents of the Debtor.

Failure of Sale to Close.  In the event the sale to the Proposed Buyer fails to close because the contingencies to closing have not all been met, Debtor will file an appropriate document to notify the Court and request an immediate hearing regarding the status of this case.

Preference Claims Extinguished.  The Plan contemplates payment to the holders of Class 7 claims the amount of 10% of the allowed amount of their claims.  This payment is being made to provide some value to the holders of these claims in spite of the fact that a Chapter 7 liquidation would result in no payment on these claims.  The Plan, therefore, does not contemplate the prosecution of any preference claims and any such claims which may exist will be extinguished at Closing.

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 8 of 10

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  Some terms used in this Plan are defined in the section in which such term is used.  Definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan except that the term "Debtor" as used herein encompasses both the pre-petition entity, Eugene Pipe, LLC, and the debtor-in-possession during the pendency of this Chapter 11 case.

8.02    Effective Date of Plan. The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation.  But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    Severability.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Oregon govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

9.01.   No Discharge.  In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

## ARTICLE X
## OTHER PROVISIONS

10.1    Re-vesting of Property of the Estate.  Property of the estate will not revest in the Debtor at any time.  Title to all property of the estate will pass to the Proposed Buyer at Closing.

10.2    Dissolution of Debtor.  After Closing of the sale described herein, Debtor will be dissolved.

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 9 of 10

10.3 <u>Closing of Case.</u> Upon consummation of the sale at Closing and payment of the Class 7 claims as provided herein, Debtor will apply to the Bankruptcy Court for an order closing this case.

THE SCOTT LAW GROUP

By:     /s/ Loren S. Scott
          Loren S. Scott, OSB # 024502
          Natalie C. Scott, OSB #024510
             Attorneys for Debtor

DEBTOR'S PLAN OF LIQUIDATION DATED JULY 21, 2011 - Page 10 of 10

In re: **Eugene Pipe, LLC**

Case No. **11-60920-fra11**
(If known)

Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **NONE** | | | | |
| | Total ➤ | | 0.00 | |

(Report also on Summary of Schedules.)

In re  **Eugene Pipe, LLC**                                                                    ,       Case No.  **11-60920-fra11**
                          Debtor                                                                                        (If known)

# SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand | | **Petty Cash** | | **26.00** |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Summit Bank; Checking Account Ending in 1307** | | **298,603.41** |
| Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Summit Bank; Checking Account Ending in 1404** | | **208.31** |
| Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Summit Bank; Money Market Account** | | **96.66** |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| | | | | |

**EXHIBIT B - Page 2 of 6**

In re  **Eugene Pipe, LLC** _____ ,     Case No.  **11-60920-fra11** _____
_____
**Debtor**                                                                                  **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 9. Interests in insurance policies.  Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities.  Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses.  Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures.  Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Muhlheim Boyd Retainer** | | **43,245.50** |
| Accounts receivable. | | **Roger Robb Retainer** | | **5,000.00** |
| Accounts receivable. | | **See attached list (Schedule 16)** | | **1,117,951.00** |
| Accounts receivable. | | **Wear Technology - credit from a return** | | **664.00** |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds.  Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property.  Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles.  Give particulars. | X | | | |
| | | | | |

**EXHIBIT B - Page 3 of 6**

In re   **Eugene Pipe, LLC** _____,        Case No.   **11-60920-fra11** _____
                        **Debtor**                                                (If known)

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment and supplies used in business. | | **2001 Hyster Forklift model #H90XMS** | | **15,000.00** |
| Machinery, fixtures, equipment and supplies used in business. | | **Equipment purchased from Hoverter Engineering** | | **80,000.00** |
| Machinery, fixtures, equipment and supplies used in business. | | **See attached list (Schedule 29)** | | **1,205,000.00** |
| 30. Inventory. | | **See attached list (Schedule 30)** | | **2,161,768.00** |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

_2_   continuation sheets attached          Total  ⟩    **$4,927,562.88**

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)


# SUMMARY APPRAISAL REPORT

May 18, 2011                                        File Reference: NW-1557
                                                   Case No: 11-60920-fra11

Loren Scott
MB-Law Office
88 East Broadway
Eugene, OR 97401

Reference: **RIDGELINE PIPE MANUFACTURING**

At your request, we have appraised the machinery and equipment (M&E) of the Ridgeline Pipe Manufacturing facility located at 2220 Nugget Way, Eugene, Oregon.

The purpose of this appraisal is to express our opinion of the Fair Market Value-Installed and Forced Liquidation Value –Removed or Auction Value of the fee simple interest in the machinery and equipment (M&E), subject to the definition of value, assumptions and limiting conditions, and certification in the attached report.  The Ridgeline Pipe Manufacturing facility was inspected on May 6, 2011.

The appraisal has accordingly been completed under the assumptions and limiting conditions and the certification presented in this Summary Report.  The Summary Report incorporates t a summary of practical explanation of the data, reasoning and analysis that were used to develop the opinion of value.  It also includes descriptions of the subject property and the market for the subject property-type. It is our understanding that this report may use for Chapter 11 reorganization purposes.

Based on the data presented, our opinion of the fair market value-installed and the forced liquidation value - removed or auction value of the subject (M&E), as of May 6, 2011 *"as is"*, is presented as follows.

### FAIR MARKET VALUE INSTALLED

### ONE MILLION FOUR HUNDRED TEN THOUSAND DOLLARS
### $1,410,000 (rd)

The fair market value-installed estimate was premised on a 6 to 12 month exposure and marketing period.

### FORCED LIQUIDATION VALUE REMOVED (AUCTION VALUE)

### FIVE HUNDRED TEN THOUSAND DOLLARS
### $510,000 (rd)

The auction or forced liquidation value-removed estimate was premised on an auction to be held within 60 days of equipment possession.

May 18, 2011                                    Re: Ridgeline Pipe Manufacturing
Loren Scott
MB-Law Office


Appraisal Resource, PC has performed the subject appraisal based on our understanding of the requirements and policies of the FDIC. Due diligence was followed in the preparation of this appraisal assignment. It is our practice to adhere to the Uniform Standards of Professional Appraisal Practice adopted by the Appraisal Standards Board of the Appraisal Foundation.

Descriptions of the property appraised and explanations of the appraisal procedures used are presented in the report.

A copy of this report and the field data supporting it will remain in our files for 5 years.

Very truly yours,

APPRAISAL RESOURCE, PC
John C. Kruzinski, ASA
Appraisal Director (Phone: 503-230-8018 Email: johnckruze@aol.com)
Certified General Real Estate Appraiser State of Oregon #C000225
Accredited Senior Appraiser, American Society of Appraisers #00076



Case 11-60920-fra11    Doc 75    Filed 07/21/11

# Ridgeline Pipe Manufacturing
## Balance Sheet
### As of December 31, 2010

|  | Dec 31, 10 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 001000 · Cash | 338,374 |
| **Total Checking/Savings** | 338,374 |
| | |
| **Accounts Receivable** | |
| 001120 · Accounts Receivable Pre | 1,476,991 |
| 001121 · Allowance for Doubtful Accounts | -7,560 |
| **Total Accounts Receivable** | 1,469,431 |
| | |
| **Other Current Assets** | |
| 001200 · Inventory | 2,035,895 |
| 001420 · Prepaid Commissions | 100,057 |
| 001430 · Prepaid Property Taxes | 47,579 |
| 001432 · Prepaid SBA Fees | 35,075 |
| 001433 · Prepaid Bank Loan Fees | 26,826 |
| 001434 · Prepaid NSF Fees | 14,338 |
| **Total Other Current Assets** | 2,259,770 |
| | |
| **Total Current Assets** | 4,067,575 |
| | |
| **Fixed Assets** | |
| 001505 · PP&E | 5,755,425 |
| 001508 · Construction in Progress | 421,069 |
| 001720 · Accum Depr Equipment | -1,755,067 |
| 001740 · Accum Depr Office Equipment | -36,620 |
| **Total Fixed Assets** | 4,384,807 |
| | |
| **TOTAL ASSETS** | 8,452,382 |
| | |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| 002100 · Accounts Payable Pre | 506,637 |
| **Total Accounts Payable** | 506,637 |
| | |
| **Credit Cards** | |
| 002150 · WCB - Visa | 5,040 |
| **Total Credit Cards** | 5,040 |
| | |
| **Other Current Liabilities** | |
| 002200 · Accrued Expenses | 29,128 |
| 002210 · Shipping Accrual | 19,221 |

EXHIBIT C - Page 1 of 4

Case 11-60920-fra11   Doc 75   Filed 07/21/11

# Ridgeline Pipe Manufacturing
# Balance Sheet
### As of December 31, 2010

|  | Dec 31, 10 |
|---|---:|
| **002220 · Accrued Rebates** | 542,120 |
| **002230 · Accrued Commissions** | 19,014 |
| **002240 · Accrued Cash Discounts** | 10,269 |
| **002270 · Accrued Investor Loan Interest** | 13,636 |
| **002300 · Accrued Payroll** | 63,661 |
| **002310 · Accrued State Taxes** | 9,390 |
| **002400 · Payroll Liabilities** | 485 |
| **002530 · Current Portion  Long Term Debt** | 4,452,122 |
| **002540 · Other Current Liabilities** | 3,340 |
| **Total Other Current Liabilities** | 5,162,386 |
|  |  |
| **Total Current Liabilities** | 5,674,063 |
|  |  |
| **Long Term Liabilities** |  |
| **002703 · Wildish Lease Note 1** | 66,489 |
| **002704 · Wildish Equipment Purchase** | 191,146 |
| **002705 · OECD Loan** | 50,000 |
| **002706 · West Coast Bank Loan** | 726,398 |
| **002707 · Hyster Fork Lift Lease** | 13,434 |
| **002708 · SBA Loan** | 1,596,970 |
| **002709 · OxyNote** | 892,576 |
| **002710 · Wildish Lease Note 2** | 158,379 |
| **002711 · Jeff Sherman Forklift Loan** | 11,463 |
| **002799 · Contra Acct to cur. portion LTD** | -4,452,122 |
| **002800 · Investor Loans** | 476,974 |
| **002823 · EP Lenders Loan** | 3,100,000 |
| **Total Long Term Liabilities** | 2,831,707 |
|  |  |
| **Total Liabilities** | 8,505,770 |
|  |  |
| **Equity** |  |
| **Equity** | 443,464 |
| **Net Income** | -496,856 |
| **Total Equity** | -53,392 |
|  |  |
| **TOTAL LIABILITIES & EQUITY** | 8,452,378 |

EXHIBIT C - Page 2 of 4

Page 2 of 2

Case 11-60920-fra11    Doc 75    Filed 07/21/11

# Ridgeline Pipe Manufacturing
# Profit & Loss
### January through December 2010

|  | Jan - Dec 10 |
|---|---:|
| **Ordinary Income/Expense** | |
| **Income** | |
| **Sales Retail** | 0 |
| **124010 · Pipe Gross Sales** | 15,568,240 |
| **124011 · Pipe Discounts** | -169,248 |
| **124012 · Pipe Rebates** | -437,054 |
| **124020 · Purch Fittings Gross Sales** | 923,294 |
| **124021 · Purchased Fittings Discounts** | -10,180 |
| **124022 · Purchased Fittings Rebates** | -51,682 |
| **124030 · Manufactured Fittings Gross Sal** | 868,451 |
| **124031 · Mfg. Fittings Discounts** | -9,549 |
| **124032 · Mfg. Fittings Rebates** | -49,740 |
| **124040 · Misc. Sales** | -10,460 |
| **3140400 · Freight Income** | 0 |
| **Total Income** | 16,622,072 |
| | |
| **Cost of Goods Sold** | |
| **10 · Product Costs** | 13,922,357 |
| **11 · Blending Department** | 0 |
| **12 · Pipe Production** | 588,927 |
| **13 · Maintenance** | 216,811 |
| **20 · Manufactured Fittings** | 408,642 |
| **21 · Purchased Fittings** | 56,129 |
| **Total COGS** | 15,192,866 |
| | |
| **Gross Profit** | 1,429,206 |
| | |
| **Expense** | |
| **Non-Inventory** | 0 |
| **Scrapped Inventory** | 0 |
| **30 · Marketing** | 526,659 |
| **31 · Shipping** | 198,938 |
| **32 · Admin Department** | 607,571 |
| **Total Expense** | 1,333,168 |
| | |
| **Net Ordinary Income** | 96,038 |
| | |
| **Other Income/Expense** | |
| **Other Income** | |
| **004080 · Interest Income** | 1 |
| **004090 · Other Income** | 1,250 |
| **Total Other Income** | 1,251 |
| | |
| **Other Expense** | |
| **790100 · Interest Expense** | 594,144 |

# Ridgeline Pipe Manufacturing
# Profit & Loss
### January through December 2010

|  | Jan - Dec 10 |
|---|---|
| **Total Other Expense** | 594,144 |
| **Net Other Income** | -592,893 |
| **Net Income** | **-496,855** |

## MONTHLY OPERATING REPORT FOR
## CORPORATE OR PARTNERSHIP DEBTOR
### (Including LLCs and LLPs)

Case No.   11-60920-fra11

Debtor   Eugene Pipe LLC          Report Month/Year          Jun-11

**Instructions**: The debtor's monthly financial report shall include this cover sheet signed by the debtor and all UST forms and supporting documents. Exceptions, if allowed, are noted in the checklist below. Failure to comply with the reporting requirements of Local Bankruptcy Rule 2015-2, or the U.S. Trustee's reporting requirements, is cause for conversion or dismissal of the case.

The debtor submits the following with this monthly financial report:

|        |                                                                                             | Completed | Not Applicable |
|--------|---------------------------------------------------------------------------------------------|-----------|----------------|
| **UST-11** | **Comparative Income Statement** or debtor's income statement (must include all line items specified on UST-11). | X | |
| **UST-12** | **Comparative Balance Sheet** or debtor's balance sheet (must include all line items specified on UST-12. The debtor's balance sheet, if used, shall include a breakdown of pre- and post-petition liabilities. The breakdown may be provided as a separate attachment to the debtor's balance sheet. | X | |
| **UST-13** | **Comparative Cash Flow Statement** or debtor's cash flow statement (must include all line items specified on UST-13). Complete this statement if the debtor is reporting based on the accrual basis of accounting. This is the required method, unless other arrangements have been made with the U.S. Trustee. | X | |
| **UST-14** | **Summary of Disbursements** | X | |
| **UST-14A** | **Statement of Cash Receipts and Disbursements** Complete one or more to include all bank accounts or other sources of debtor funds. Attach copies of monthly bank statements and all supporting documents described in the instructions. | X | |
| **UST-14B** | **Additional Disbursement Information** | X | |
| **UST-15** | **Statement of Aged Receivables** Provide a detailed accounting of aged receivables on, or as an attachment to, UST-15. | X | |
| **UST-16** | **Statement of Aged Post-Petition Payables** Provide a detailed accounting of aged post-petition payables on, or as an attachment to, UST-16. | X | |
| **UST-17** | **Statement of Operations** When applicable, UST-17 shall include copies of supporting documents such as an escrow statement for the sale of real property, an auctioneer's report for property sold at auction, or a certificate of insurance or copy of debtor's bond for any change in insurance or bond coverage. | X | |

**DEBTOR'S CERTIFICATION**

I certify under penalty of perjury that (1) I have personally prepared this financial report or directly supervised its preparation, and (2) the information contained in this monthly financial report is complete, true, and accurate to the best of my knowledge, information, and belief.

BY: /s/ Mike Stickel          DATE: 7/13/11

TITLE:   Managing Member

The debtor, or trustee, if appointed, must sign the monthly financial report. Only an authorized officer may sign a financial report for a corporate debtor and only a general partner has authority to sign a financial report for a partnership debtor. Debtor's counsel may not sign a financial report for the debtor.

| | | |
|---|---|---|
| | Case Number: | 11-60920-fra11 |
| | Report Mo/Yr: | Jun-11 |

Debtor: Eugene Pipe LLC

### UST-11, COMPARATIVE INCOME STATEMENT

INSTRUCTIONS: The initial report should include only business activity commencing from the petition date through the end of the month.  If the

| For the Month of: | MO/YR | MO/YR | MO/YR | Cumulative To Date |
|---|---|---|---|---|
| Revenue | | | | - |
| Less: Returns and Allowances | see attached | | | - |
| NET REVENUE | - | - | - | - |
| | | | | |
| Cost of Goods sold: | | | | |
| Beginning Inventory | | | | - |
| Add: Purchases | | | | - |
| Less:  Ending Inventory | | | | - |
| Cost of Goods Sold | - | - | - | - |
| | | | | |
| Additional Costs of Good Sold: | | | | |
| Direct Labor | | | | - |
| Freight In | | | | - |
| TOTAL COST OF GOOD SOLD | - | - | - | - |
| | | | | |
| Other Operating Expenses: | | | | |
| Officers' Salaries (Gross) | | | | - |
| Other Salaries (Gross) | | | | - |
| Depreciation and Amortization | | | | - |
| Employee Benefits | | | | - |
| Payroll Taxes (Employer's portion) | | | | - |
| Insurance | | | | - |
| Rent | | | | - |
| General and Administrative | | | | - |
| TOTAL OPERATING EXPENSES | - | - | - | - |
| NET OPERATING INCOME (LOSS) | - | - | - | - |
| | | | | |
| Add:     Other Income | | | | - |
| | | | | |
| Less:     Interest Expense | | | | - |
| | | | | |
| Less:     Non-recurring items | | | | |
| Professional Fees | | | | - |
| UST Fees | | | | - |
| Other (specify) | | | | - |
| TOTAL NON-RECURRING ITEMS | - | - | - | - |
| | | | | |
| GAIN (LOSS) ON DISPOSAL OF ASSETS | | | | - |
| | | | | |
| NET INCOME (LOSS) BEFORE INCOME TAX | - | - | - | - |
| Income Taxes | | | | - |
| NET INCOME (LOSS) | - | - | - | - |

EXHIBIT D - Page 2 of 18

Case 11-60920-fra11    Doc 75    Filed 07/21/11

# Ridgeline Pipe Manufacturing
## Profit & Loss
### Since March 4, 2011

| | Mar 4 - 31, 2011 | April 2011 | May 2011 | June 2011 | Cum to date |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
|   **Income** | | | | | |
|     124010 · Pipe Gross Sales | 2,073,072 | 1,977,833 | 2,053,692 | 1,917,193 | 8,021,790 |
|     124011 · Pipe Discounts | -19,300 | -16,614 | -22,325 | -23,128 | -81,367 |
|     124012 · Pipe Rebates | -81,251 | -57,873 | -69,183 | -43,477 | -251,784 |
|     124020 · Purch Fittings Gross Sales | 81,185 | 77,591 | 75,587 | 88,034 | 322,397 |
|     124021 · Purchased Fittings Discounts | -751 | -994 | -842 | -1,042 | -3,629 |
|     124022 · Purchased Fittings Rebates | -4,910 | -4,121 | -3,270 | -5,172 | -17,473 |
|     124030 · Manufactured Fittings Gross Sal | 78,912 | 79,458 | 89,903 | 101,608 | 349,881 |
|     124031 · Mfg. Fittings Discounts | -756 | -1,037 | -982 | -1,206 | -3,981 |
|     124032 · Mfg. Fittings Rebates | -5,302 | -4,221 | -3,891 | -5,971 | -19,385 |
|     124040 · Misc. Sales | -1,757 | -324 | -3,144 | 7 | -5,218 |
|   **Total Income** | 2,119,142 | 2,049,698 | 2,115,545 | 2,026,846 | 8,311,231 |
| | | | | | |
|   **Cost of Goods Sold** | | | | | |
|     10 · Product Costs | 1,825,000 | 1,643,492 | 1,596,219 | 1,574,355 | 6,639,066 |
|     12 · Pipe Production | 65,047 | 11,970 | 61,704 | 63,516 | 202,237 |
|     13 · Maintenance | 20,372 | 19,692 | 22,255 | 22,117 | 84,436 |
|     20 · Manufactured Fittings | 26,698 | 41,119 | 42,315 | 32,749 | 142,881 |
|     21 · Purchased Fittings | 5,171 | 4,315 | 4,226 | 5,000 | 18,712 |
|   **Total COGS** | 1,942,288 | 1,720,588 | 1,726,719 | 1,697,737 | 7,087,332 |
| | | | | | |
| **Gross Profit** | 176,854 | 329,110 | 388,826 | 329,109 | 1,223,899 |
| | | | | | |
|   **Expense** | | | | | |
|     30 · Marketing | 57,294 | 55,003 | 54,521 | 52,919 | 219,737 |
|     31 · Shipping | 14,188 | 17,329 | 22,469 | 18,540 | 72,526 |
|     32 · Admin Department | 52,979 | 41,410 | 55,007 | 61,613 | 211,009 |
|   **Total Expense** | 124,461 | 113,742 | 131,997 | 133,072 | 503,272 |
| | | | | | |
| **Net Ordinary Income** | 52,393 | 215,368 | 256,829 | 196,037 | 720,627 |
| | | | | | |
| **Other Income/Expense** | | | | | |
|   **Other Expense** | | | | | |
|     790100 · Interest Expense | 42,960 | 45,106 | 47,067 | 46,708 | 181,841 |
|     810000 · Non-recurring Items | 13,503 | 12,308 | 8,662 | 6,044 | 40,517 |
|       810001 Professional fees | 13,503 | 5,808 | 8,662 | 6,044 | 34,017 |
|       810002 UST fees | 0 | 6,500 | 0 | 0 | 6,500 |
|       810003 other | 0 | 0 | 0 | 0 | 0 |
|   **Total Other Expense** | 56,463 | 57,414 | 55,729 | 52,752 | 222,358 |
| | | | | | |
|   **Net Other Income** | -56,463 | -57,414 | -55,729 | -52,752 | -222,358 |
| | | | | | |
| **Net Income** | -4,070 | 157,954 | 201,100 | 143,285 | 498,269 |

Case Number: | 11-60920-fra11
Report Mo/Yr: | June-11

**Debtor:** | Eugene Pipe LLC

| **UST-12, COMPARATIVE BALANCE SHEET** |
|:---:|

| ASSETS                  As of month ending: | MO/YR | MO/YR | MO/YR | PER SCHEDULES (i.e. Petition Date) |
|---|---|---|---|---|
| Current Assets | | | | |
| Cash-Restricted | see attached | | | - |
| Cash-Unrestricted | | | | - |
| TOTAL CASH | - | - | - | - |
| | | | | |
| | | | | |
| Accounts Receivable | | | | - |
| Less: Allowance for Doubtful Accounts | | | | |
| NET ACCOUNTS RECEIVABLE | | - | - | |
| | | | | |
| Notes Receivable | - | | | |
| Insider Receivables | - | | | |
| Inventory  (see note below) | | | | - |
| Prepaid Expenses | | | | - |
| Other (attach list) | | | | |
| TOTAL CURRENT ASSETS | - | - | - | - |
| Fixed Assets | | | | |
| Real Property/Buildings | | | | |
| Equipment | | | | |
| Accumulated Depreciation | | | | |
| NET FIXED ASSETS | - | - | - | - |
| | | | | |
| Other Assets (attach list) | | | | |
| TOTAL ASSETS | - | - | - | - |
| | | | | |
| | | | | |
| LIABILITIES | | | | |
| Post-Petition Liabilities | | | | |
| Trade Accounts Payable | | | | |
| Taxes Payable | | | | |
| Accrued Professional Fees | | | | |
| Notes Payable | - | | | |
| Rents and Lease payables | - | | | |
| Accrued Interest | | | | |
| Other (specify) | | | | |
| TOTAL POST-PETITION LIABILITIES | - | - | - | |
| Pre-Petition Liabilities | | | | |
| Secured Debt | | | | - |
| Priority Debt | - | | | - |
| Unsecured Debt | | | | - |
| Other (attach list) | | | | |
| TOTAL PRE-PETITION LIABILITIES | - | - | - | - |
| | | | | |
| TOTAL LIABILITIES | - | - | - | - |

Method of inventory valuation (Cost, Lower of Cost or Market, FIFO, LIFO, other):
Material at FIFO, labor and overhead at standard

Case Number: | 11-60920-fra11
Report Mo/Yr: | June-11

**Debtor:** Eugene Pipe LLC

## UST-12, COMPARATIVE BALANCE SHEET

| EQUITY          As of month ending: | MO/YR | MO/YR | MO/YR | PER SCHEDULES (i.e. Petition Date) |
|---|---|---|---|---|
| Owners' Equity (or Deficit) | | | | |
| | | | | |
| Prepetition Owners' Equity | | | | |
| Post-petition Cumulative Profit or (Loss) | | | | |
| Direct Charges to Equity (**Explain**) | | | | |
| | | | | |
| TOTAL OWNERS' EQUITY (DEFICIT) | - | - | - | - |
| | | | | |
| | | | | |
| TOTAL LIABILITIES AND OWNERS' EQUITY(DEFICIT) | - | - | - | - |

FOOTNOTES TO BALANCE SHEET:

**see attached**

# Ridgeline Pipe Manufacturing
## Balance Sheet
### As of June 30, 2011

| | Mar 31, 2011 | Apr 30, 2011 | May 31, 2011 | June 30, 2011 | Per schedules |
|---|---|---|---|---|---|
| **ASSETS** | | | | | |
| **Current Assets** | | | | | |
| **Checking/Savings** | | | | | |
| **001000 · Cash** | | | | | |
| 001008 Summit operating account | 407,466 | 75,804 | 770,828 | 688,366 | |
| 001009 Summit Payroll account | 71,509 | 338 | 338 | 338 | |
| **Total Checking/Savings** | 478,975 | 76,142 | 771,166 | 688,704 | 311,458 |
| **Accounts Receivable** | | | | | |
| 001120 · Accounts Receivable Pre | 371,062 | 60,700 | 24,274 | 17,418 | |
| 001121 · Allowance for Doubtful Accounts | -8,711 | -18,442 | -18,442 | -18,442 | |
| 001130 · Accounts Receivable Post | 2,072,728 | 2,798,806 | 2,608,187 | 2,493,654 | |
| **Total Accounts Receivable** | 2,435,079 | 2,841,064 | 2,614,019 | 2,492,630 | 1,117,951 |
| **Other Current Assets** | | | | | |
| 001200 · Inventory | 1,569,772 | 1,542,732 | 1,465,099 | 1,855,281 | 2,161,768 |
| 001400 · Prepaid Expenses | 102,955 | 88,194 | 72,559 | 107,723 | 48,910 |
| 001420 · Prepaid Commissions | 89,815 | 85,826 | 82,085 | 76,143 | |
| 001430 · Prepaid Property Taxes | 33,457 | 28,699 | 23,941 | 19,183 | |
| 001432 · Prepaid SBA Fees | 34,034 | 33,688 | 33,341 | 32,994 | |
| 001433 · Prepaid Bank Loan Fees | 20,221 | 18,019 | 15,817 | 13,615 | |
| 001434 · Prepaid NSF Fees | 10,024 | 8,587 | 7,149 | 5,711 | |
| 001435 · Due from Factor | 10,274 | 9,936 | 0 | 0 | |
| 001436 · Deposits | 500 | 500 | 500 | 500 | |
| 001437 · Prepaid Insurance | 4,967 | 4,967 | 4,967 | 4,967 | |
| **Total Other Current Assets** | 1,876,019 | 1,821,148 | 1,705,458 | 2,116,117 | |
| **Total Current Assets** | 4,790,073 | 4,738,354 | 5,090,643 | 5,297,451 | |
| **Fixed Assets** | | | | | |
| 001505 · PP&E | 6,289,807 | 6,299,690 | 6,306,754 | 6,313,173 | |
| 001720 · Accum Depr Equipment | -1,972,604 | -2,045,276 | -2,117,948 | -2,190,684 | |
| 001740 · Accum Depr Office Equipment | -40,284 | -41,505 | -42,726 | -43,948 | |
| **Total Fixed Assets** | 4,276,919 | 4,212,909 | 4,146,080 | 4,078,541 | 1,300,000 See footnote 1 |
| **TOTAL ASSETS** | 9,066,992 | 8,951,263 | 9,236,723 | 9,375,992 | |
| **LIABILITIES & EQUITY** | | | | | |
| **Liabilities** | | | | | |
| **Current Liabilities** | | | | | |
| **Accounts Payable** | | | | | |
| 002110 · Accounts Payable Post | 118,904 | 75,807 | 63,404 | 78,856 | |
| **Total Accounts Payable** | 118,904 | 75,807 | 63,404 | 78,856 | |
| **Credit Cards** | | | | | |
| 002150 · WCB - Visa | 1,484 | 3,828 | 3,385 | 3,378 | |
| **Total Credit Cards** | 1,484 | 3,828 | 3,385 | 3,378 | |
| **Other Current Liabilities** | | | | | |
| 002200 · Accrued Expenses | 33,657 | 35,711 | 35,773 | 36,396 | |
| 002210 · Shipping Accrual | 1,437 | 5,091 | 12,990 | 2,242 | |
| 002220 · Accrued Rebates | 91,463 | 157,678 | 234,022 | 288,642 | |
| 002230 · Accrued Commissions | 39,965 | 35,530 | 35,142 | 31,121 | |
| 002240 · Accrued Cash Discounts | 21,305 | 23,426 | 23,091 | 23,098 | |
| 002250 · Accrued Lease | 31,208 | 0 | 0 | 0 | |
| 002260 · Accrued Barrel & Screw Expense | 37,500 | 8,948 | 21,448 | 19,020 | |
| 002280 · Accrued interest/late fees | 41,934 | 41,663 | 43,174 | 13,955 | |
| 002290 · Accrued liab JPI | 238,516 | 0 | 0 | 0 | |
| 002300 · Accrued Payroll | 99,660 | 38,646 | 53,241 | 67,315 | |
| 002310 · Accrued State Taxes | 7,029 | 4,112 | 5,068 | 3,653 | |
| 002400 - Accrued EP II loan fees | | | 833 | 1,250 | |

EXHIBIT D - Page 6 of 18
Case 11-60920-fra11    Doc 75    Filed 07/21/11

# Ridgeline Pipe Manufacturing
## Balance Sheet
### As of June 30, 2011

| | Mar 31, 2011 | Apr 30, 2011 | May 31, 2011 | June 30, 2011 | Per schedules | |
|---|---|---|---|---|---|---|
| 002400 · Payroll Liabilities | -360 | -48 | -48 | -48 | | |
| 002530 · Current Portion Long Term Debt | 430,000 | 500,000 | 500,000 | 500,000 | | |
| **Total Other Current Liabilities** | 1,073,314 | 850,757 | 964,734 | 986,644 | | |
| **Total Current Liabilities** | 1,193,702 | 930,392 | 1,031,523 | 1,068,878 | | |
| **Long Term Liabilities** | | | | | | |
| 002799 · Contra Acct to cur. portion LTD | -430,000 | -500,000 | -500,000 | -500,000 | | |
| 002825 · EP Lendors II Loan | 430,000 | 500,000 | 500,000 | 500,000 | | |
| 002870 · Pre Petition Liabilities | 0 | 0 | 0 | 0 | | |
| secured debt | 3,987,483 | 3,981,947 | 3,967,964 | 3,926,596 | 3,918,561 | See footnote 2 |
| Priority debt | 5,944 | 5,944 | 3,152 | 3,152 | 3,165 | See footnote 3 |
| unsecured debt | 4,168,729 | 4,207,281 | 4,207,282 | 4,207,281 | 4,162,986 | See footnote 4 |
| other | 125,662 | 75,662 | 75,662 | 75,662 | | See footnote 5 |
| **Total Long Term Liabilities** | 8,287,818 | 8,270,834 | 8,254,060 | 8,212,691 | | |
| **Total Liabilities** | 9,481,520 | 9,201,226 | 9,285,583 | 9,281,569 | | |
| **Equity** | | | | | | |
| owners equity | 443,464 | 443,464 | 443,464 | 443,464 | | |
| 003310 · Pre petition retained earnings | -853,924 | -847,315 | -847,315 | -847,315 | | See footnote 6 |
| Post petition Net Income | -4,068 | 153,887 | 354,989 | 498,275 | | |
| **Total Equity** | -414,528 | -249,964 | -48,862 | 94,424 | | |
| **TOTAL LIABILITIES & EQUITY** | 9,066,992 | 8,951,262 | 9,236,721 | 9,375,993 | | |
| | | | | | | |
| Check total | 0 | 1 | 2 | -1 | | |

**Footnote 1:**

Fixed assets:

Book balance of net fixed assets is $4,276,919. Fair Market Value is

esimated to be $1,300,000.

An appraisal of these assets is in process.

June: Appraisal of these assets is completed. Liquidation value is $510,000 and market value is $1,410,000.

**Footnote 2:**

March: Secured debt increased by $68,922 to primarily to include interest between

Jan. 1, 2011 and March 3, 2011 on secured debt

April: Move accrued interest from secured to unsecured $7272

Adjust accrued interest on secured debt $2379

May: Paid adequate protection $16,983

June: Paid adequate protection $41,368

**Footnote 3:**

March: Priority debt increased by $2792 to include Lane County property taxes

previously in unsecured debt.

May: paid Lane Count property tax for $2,792

**Footnote 4:**

March: Unsecured debt increased by $36,951. Primarily to include interest and

late fees between Jan. 1, 2010 and March 3, 2011 on unsecured debt ($30,782).

The amount also increased due to invoices received after March 3 net of

a price adjustment credit memo on a raw material purchase.

Property taxes were moved to priority ($2792).

April: Accrued rent added to unsecured debt $31208

Move accrued interest from secured to unsecured $7272

**Footnote 5:**

# Ridgeline Pipe Manufacturing
## Balance Sheet
### As of June 30, 2011

| | Mar 31, 2011 | Apr 30, 2011 | May 31, 2011 | June 30, 2011 | Per schedules |
|---|---|---|---|---|---|

Requirements of Oregon grant of $50,000 were completed and the grant was forgiven.

**Footnote 6:**

**Items charged to pre petition retained earnings during April:**

| | |
|---|---|
| Rent expense for March | 31,208 |
| Bad Debt expense for December 2010 invoice | 9,731 |
| Interest accrual for secured debt | 2,379 |
| AP invoice | 72 |
| Oregon Grant forgiven | -50,000 |
| **Total** | -6,610 |

Case Number: 11-60920-fra11
Report Mo/Yr: June-11

Debtor: Eugene Pipe LLC

## UST-13, COMPARATIVE CASH FLOW STATEMENT

| As of month ending: | MO/YR | MO/YR | MO/YR | Cumulative Filing to Date |
|---|---|---|---|---|
| NET INCOME (LOSS) | see attached | | | |
| | | | | |
| ADJUSTMENTS TO RECONCILE NET INCOME TO NET CASH: | | | | |
| | | | | |
| Depreciation and Amortization | | | | |
| (Gain) Loss on Sale of Assets | | | | |
| (Increase) Decrease in Prepaids | | | | |
| (Increase) Decrease in Receivables | | | | |
| (Increase) Decrease in Inventory | | | | |
| | | | | |
| Increase (Decrease) in Payables | | | | |
| Increase (Decrease) in Taxes Payable | | | | |
| Increase (Decrease) in Professional Fees | | | | |
| Increase (Decrease) in Rents/Leases Pay | | | | |
| Increase (Decrease) in Accrued Interest | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| NET CASH PROVIDED BY OPERATIONS | - | | | |
| | | | | |
| CASH FLOWS FROM INVESTING/FINANCING: | | | | |
| | | | | |
| Purchase of Fixed Assets | | | | |
| Proceeds from Sale of Fixed Assets | | | | |
| Capital Contributions | | | | |
| Loan Proceeds | | | | |
| Loan Principal and Capital Lease Payments | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| NET INCREASE (DECREASE) IN CASH | - | | | |
| | | | | |
| BEGINNING CASH | - | - | - | |
| | | | | |
| ENDING CASH | | | | |

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 5 of 13

(Revised 5/18/10)

# Ridgeline Pipe Manufacturing
## Statement of Cash Flows
### June, 2011

| | Cash flow March 4-31, 2011 | Cash flow April, 2011 | Cash flow May, 2011 | Cash flow June, 2011 | Cum to date |
|---|---|---|---|---|---|
| **OPERATING ACTIVITIES** | | | | | |
| Net Income | -4,068 | 157,955 | 201,102 | 143,285 | 498,274 |
| Adjustments to reconcile Net Income | | | | | |
| to net cash provided by operations: | | | | | |
| Depreciation | 66,726 | 73,893 | 73,893 | 73,958 | 288,470 |
| 001120 · Accounts Receivable, Net | -1,425,207 | -405,985 | 227,046 | 121,389 | -1,482,757 |
| 001200 Inventory | 460,766 | 27,040 | 77,632 | -390,183 | 175,255 |
| 001400 · Prepaid Expenses | -42,371 | 27,832 | 38,057 | -20,477 | 3,041 |
| 002110 · Accounts Payable Post | 118,904 | -43,097 | -12,403 | 15,452 | 78,856 |
| 002150 · WCB - Visa | 1,572 | 2,344 | -443 | -7 | 3,466 |
| 002200 · Accrued Expenses | 26,435 | 2,054 | 62 | 622 | 29,173 |
| 002210 · Shipping Accrual | -23,005 | 3,654 | 7,899 | -10,748 | -22,200 |
| 002220 · Accrued Rebates | 91,463 | 66,215 | 76,344 | 54,620 | 288,642 |
| 002230 · Accrued Commissions | 39,965 | -4,435 | -387 | -4,022 | 31,121 |
| 002240 · Accrued Cash Discounts | 12,491 | 2,121 | -335 | 7 | 14,284 |
| 002250 · Accrued Lease | 28,181 | -31,208 | 0 | 0 | -3,027 |
| 002260 · Accrued Barrel & Screw Expense | 12,500 | -28,552 | 12,500 | -2,428 | -5,980 |
| 002280 · Accrued Interest/late fees | 41,934 | -271 | 1,511 | -29,219 | 13,955 |
| 002290 · Accrued liab JPI | 238,516 | -238,516 | 0 | 0 | 0 |
| 002300 · Accrued Payroll | 99,660 | -61,014 | 14,596 | 14,073 | 67,315 |
| 002310 · Accrued State Taxes | 7,029 | -2,917 | 956 | -1,415 | 3,653 |
| 002320 · Accrued EP II laoan fees | | | 833 | 417 | 1,250 |
| 002400 · Payroll Liabilities:002424 · Aflac Payable | -312 | 311 | 0 | 0 | -1 |
| Net cash provided by Operating Activities | -248,821 | -452,576 | 718,863 | -34,676 | -17,210 |
| | | | | | |
| **INVESTING ACTIVITIES** | | | | | |
| 001505 · PP&E | 0 | | | | 0 |
| 001508 · Construction in Progress | -470 | -9,883 | -7,064 | -6,418 | -23,835 |
| Net cash provided by Investing Activities | -470 | -9,883 | -7,064 | -6,418 | -23,835 |
| | | | | | |
| **FINANCING ACTIVITIES** | | | | | |
| 002705 OECD Grant | 0 | -50,000 | 0 | 0 | -50,000 |
| 002707 · Hyster Fork Lift Lease | -641 | -645 | -649 | -653 | -2,588 |
| 002825 · EP Lendors II Loan | 430,000 | 70,000 | 0 | 0 | 500,000 |
| 002870 · Pre Petition Liabilities:002871 · AP Pre petition | 0 | 31,280 | -16,125 | -40,716 | -25,561 |
| Pre Petition Liabilties:002880 · other LT liab | 0 | 2,379 | 0 | 0 | 2,379 |
| 003310 · Pre petition retained earnings | 0 | 6,610 | 0 | 0 | 6,610 |
| Net cash provided by Financing Activities | 429,359 | 59,624 | -16,774 | -41,369 | 430,840 |
| | | | | | |
| Net cash increase for period | 180,068 | -402,835 | 695,025 | -82,463 | 389,795 |
| | | | | | |
| Cash at beginning of period | 298,908 | 478,976 | 76,142 | 771,167 | 298,908 |
| Cash at end of period | 478,976 | 76,142 | 771,167 | 688,704 | 688,703 |

| Case Number: | 11-60920-fra11 |
|---|---|
| Report Mo/Yr: | June-11 |

**Debtor:** Eugene Pipe LLC

## UST-14, SUMMARY OF DISBURSEMENTS

**INSTRUCTIONS:** <u>BEFORE COMPLETING THIS PAGE,</u> prepare UST-14A (see next page) to include all bank accounts or other sources of the debtor's funds. The disbursement total will be used to complete this SUMMARY OF DISBURSEMENTS.

The debtor is responsible for providing accurate <u>monthly</u> disbursement totals for purposes of calculating its obligation pursuant to 28 U.S.C. § 1930(a)(6) to pay statutory fees to the U.S. Trustee. The disbursement total encompasses all payments made by the debtor during the reporting month, whether made directly by the debtor or by another party for the debtor. It includes checks written and cash payments for inventory and equipment purchases, payroll and related taxes and expenses, other operating costs, and debt reduction. It also includes payments made pursuant to joint check arrangements and those resulting from a sale or liquidation of the debtor's assets. The only transactions normally excluded from the disbursement total are transfers within the same reporting month between multiple debtor accounts.

The U.S. Trustee payment is due on the last day of the month following the end of each calendar quarter, or on **April 30, July 31, October 31, and January 31,** respectively. Because the amount billed is an estimate, the debtor is responsible for paying the correct statutory fee based on actual disbursements for the <u>calendar quarter,</u> or portion thereof while the debtor is in Chapter 11 (i.e. until the case is converted, dismissed, or closed by final decree). Failure to pay statutory fees to the U.S. Trustee is cause for conversion or dismissal of the case. A copy of the statutory fee schedule may be found on the U.S. Trustee's website located at:

http://www.usdoj.gov/ust/r18/p_library.htm

If you have any questions about how to compute the disbursement total, please call the U.S. Trustee's office:

Portland, OR     (503) 326-7651
Eugene, OR     (541) 465-6330

(UST-14A, with attachments, should follow this page.)

## COMPUTATION OF MONTHLY DISBURSEMENT TOTAL

| | |
|---|---|
| Total disbursements from UST-14A | $ (2,260,127.28) |
| Cash payments not included in total above (if any) | $ - |
| Disbursements made by third parties for the debtor (if any, explain) | $ (144,765.36) |

| | |
|---|---|
| TOTAL DISBURSEMENTS THIS MONTH FROM ALL SOURCES | $ (2,404,892.64) |

<u>Yes</u>    <u>No</u>

At the end of this reporting month, did the debtor have any <u>delinquent</u> statutory fees
owing to the U.S. Trustee?      <u>No</u>

(If yes, list each quarter that is delinquent and the amount due along with an explanation)

| <u>Quarter</u> | <u>Explanation</u> | <u>Amount</u> |
|---|---|---|
| | | |
| | | |
| | | |

*Monthly Operating Report -Corporate or Partnership Debtor*

United States Trustee-Oregon

EXHIBIT D - Page 11 of 18

Case 11-60920-fra11    Doc 75    Filed 07/21/11

Page 6 of 13

(Revised 5/18/10)

Case Number: | 11-60920-fra11
Report Mo/Yr: | June-11

**Debtor:**

Eugene Pipe LLC

## UST-14A - STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS

**INSTRUCTIONS:** Include all bank accounts or other source of the debtor's funds and attach supporting documents as indicated on the checklist below. Use additional sheets as necessary.

| Depository (Bank) Name<br>Account Number<br>Type of Account | Summit Bank<br>014003902<br>Checking | Summit Bank<br>014004003<br>Checking | | | TOTALS |
|---|---|---|---|---|---|
| **Beginning Cash Balance** | 907,313.22 | 827.74 | | | 908,140.96 |
| **Add:** | | | | | |
| Transfers in | - | 147,318.93 | | | 147,318.93 |
| Receipts deposited | 2,207,506.17 | - | | | 2,207,506.17 |
| Other (identify source) | | - | | | - |
| Total Cash Receipts | 3,114,819.39 | 148,146.67 | - | - | 2,354,825.10 |
| **Subtract:** | | | | | |
| Transfers out | (147,318.93) | | | | (147,318.93) |
| Disbursements by check or debit | (2,257,083.85) | (3,043.43) | | | (2,260,127.28) |
| Cash withdrawn | - | - | | | - |
| Other (identify source) ADP withdrawal | - | (144,765.36) | | | (144,765.36) |
| Total Cash Disbursements | (2,404,402.78) | (147,808.79) | - | - | (2,552,211.57) |
| **Ending Cash Balance** | 710,416.61 | 337.88 | - | - | 710,754.49 |

Does each account identified above include the following supporting documents, as required: Indicate **YES, NO or NOT APPLICABLE** in the boxes below.

| | | | | |
|---|---|---|---|---|
| Monthly bank statement copy<br>**(do not include bank statement copies with the report filed with the Bankruptcy Court)** | yes | yes | | |
| Bank reconciliation (including outstanding checks and deposits in transit) | yes | yes | | |
| A detailed list of receipts for the account (deposit log or receipts journal) | yes | NA | | |
| A detailed list of disbursements for the account (check register or disbursement journal) | yes | NA | | |
| Funds received and/or disbursed by another party | NA | Yes | | |

EXHIBIT D - Page 12 of 18
Case 11-60920-fra11    Doc 75    Filed 07/21/11

Case Number: 11-60920-fra11
Report Mo/Yr: June-11

**Debtor:** Eugene Pipe LLC

| UST-14B, ADDITIONAL DISBURSEMENT INFORMATION |
|---|

**Payments on Pre-Petition Unsecured Debt (requires court approval)**

Did the debtor, or another party on behalf of the debtor, make any payments during this reporting month on pre-petition unsecured debt? **If "yes", complete table for each payment.**

| Payee's Name | Nature of Payment | Payment Date | Amount | Date of Court Approval | Yes | No |
|---|---|---|---|---|---|---|
| | | | | | | no |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Payments to Attorneys and Other Professionals (requires court approval)**

Did the debtor, or another party on behalf of the debtor, make any payments during this reporting month to a professional such as an attorney, accountant, realtor, appraiser, auctioneer, business consultant, or other professional person? **If "yes", complete table for each payment.**

| Professional's Name | Type of Work Performed | Payment Date | Amount | Date of Court Approval | Yes | No |
|---|---|---|---|---|---|---|
| | | | | | | no |
| | | | | | | |

**Payments to an Officer, Director, Partner, or Other Insider of the Debtor**

Did the debtor, or another party on behalf of the debtor, make any payments during this reporting month to, or for the benefit of, an officer, director, partner, member, shareholder or other insider of the debtor? **If "yes", complete table for each payment.**

| Payee's Name | Relationship to Debtor | Payment Date | Amount | Purpose of Payment | Yes | No |
|---|---|---|---|---|---|---|
| Mike Stickel | Partner | 6/10/11 | $ 2,499 | Gross payroll | | |
| Jack Piper | Partner | 6/10/11 | $ 2,499 | Gross payroll | Yes | |
| Jeff Sherman | Partner | 6/10/11 | $ 2,499 | Gross payroll | | |
| Eric Howard | Partner | 6/10/11 | $ 2,499 | Gross payroll | | |
| Debbie Dersham | Partner | 6/10/11 | $ 2,499 | Gross payroll | | |
| Mike Stickel | Partner | 6/24/11 | $ 2,499 | Gross payroll | | |
| Jack Piper | Partner | 6/24/11 | $ 2,499 | Gross payroll | | |
| Jeff Sherman | Partner | 6/24/11 | $ 2,499 | Gross payroll | | |
| Eric Howard | Partner | 6/24/11 | $ 2,499 | Gross payroll | | |
| Debbie Dersham | Partner | 6/24/11 | $ 2,499 | Gross payroll | | |
| Debbie Dersham | Partner | 6/30/11 | $ 263 | Expense report | | |
| Jack Piper | Partner | 6/15/11 | $ 1,008 | Dental plan reimbursement | | |
| Jack Piper | Partner | 6/30/11 | $ 289 | Expense report | | |
| Eric Howard | Partner | 6/28/11 | $ 759 | Expense report | | |
| Eric Howard | Partner | 6/30/11 | $ 22 | Expense report | | |
| Jeff Sherman | Partner | 6/15/11 | $ 488 | Dental plan reimbursement | | |
| Jeff Sherman | Partner | 6/22/11 | $ 999 | Medical plan reimbursement | | |
| Mike Stickel | Partner | 6/30/11 | $ 458 | Expense report | | |
| | | | $ - | | | |

INSTRUCTIONS: Use the last column to describe the purpose of each payment, such as gross wages or salary, reimbursement for business expenses, loan repayment, advance, draw, bonus, dividend, stock distribution, or other reason for the payment.

**CERTIFICATION OF BANK ACCOUNTS:**

The undersigned certifies under penalty of perjury that every financial account used by the debtor is accounted for in UST-14A of this report and is held in a depository included on the U.S. Trustee's list of authorized depositories. The undersigned further certifies that each such depository has been notified that the account holder is a debtor in a Chapter 11 case under the jurisdiction of the Bankruptcy Court.

BY: _/s/ Mike Stickel_____ DATE: 7/11/11_____

TITLE: Managing Member_____

Monthly Operating Report -Corporate or Partnership Debtor
United States Trustee-Oregon

Page 8 of 13
(Revised 5/18/10)

EXHIBIT D - Page 13 of 18
Case 11-60920-fra11    Doc 75    Filed 07/21/11

**Debtor:** | Eugene Pipe LLC

## UST-15, STATEMENT OF AGED RECEIVABLES

**INSTRUCTIONS:** Complete all portions of UST-15, STATEMENT OF AGED RECEIVABLES, unless the debtor asserts the following two statements are true for this reporting month:

º  At the beginning of the reporting month, the debtor did not have any uncollected pre-petition or post-petition accounts receivable; and,

º  During the reporting month, the debtor did not have any receivables activity, including the accrual of new accounts receivable, or the collection or write-off of accounts receivable from prior months.

**Initial here _____ if the debtor asserts that both statements above are correct and then skip to UST-16,**
                        **Statement of Post-Petition Payables.**

### Accounts Receivable Aging

| | Balance at Month End | Current Portion | Past Due 31-60 days | Past Due 61-90 days | Past Due over 90 days | Uncollectible Receivables |
|---|---|---|---|---|---|---|
| Pre-petition | 17,417.87 | - | - | (0.20) | (1,024.47) | 18,442.54 |
| Post-petition | 2,493,653.90 | 2,467,635.35 | 25,661.14 | 357.41 | - | - |
| TOTALS | 2,511,071.77 | 2,467,635.35 | 25,661.14 | 357.21 | (1,024.47) | 18,442.54 |

Explain what efforts the debtor has made during the reporting period to collect receivables over 60 days past due.

### Accounts Receivable Reconciliation

| | Post Petition | Pre-Petition | Totals |
|---|---|---|---|
| Opening Balance | 2,608,186.66 | 24,273.76 | 2,632,460.42 |
| Add: Sales on account | 2,157,128.29 | | 2,157,128.29 |
| Less:  Payments on account | (2,200,033.71) | (6,754.59) | (2,206,788.30) |
| Less:  Write-offs or other adjustments | (71,627.34) | (101.30) | (71,728.64) |
| Closing Balance | 2,493,653.90 | 17,417.87 | 2,511,071.77 |

### Insider Receivable Reconciliation

| Insider Name (e.g. officer, director, partner, member, shareholder) Relationship to Debtor | | | |
|---|---|---|---|
| Opening Balance (if first report, use the balance on date of filing) | - | - | - |
| Add:  Current month advances | | | |
| Less:  Current month payments | | | |
| Closing Balance | - | - | - |

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

(Revised  5/18/10)

**Debtor:** Eugene Pipe LLC

## UST-16, STATEMENT OF AGED POST-PETITION PAYABLES
## PART A - TRADE ACCOUNTS PAYABLE

**INSTRUCTIONS:** Complete  PART A - TRADE ACCOUNTS PAYABLE unless the debtor asserts that this statement is true for this reporting month:

° Except for taxes disclosed in PART B of this report, the debtor has no other unpaid post-petition payables from the current reporting month or from any prior post-petition months.

**Initial here _____if the debtor asserts that the statement above is correct and then skip to UST-16, Part B, Taxes.**

### Accounts Payable Aging

| | Balance at Month End | Current Portion | Past Due 31-60 days | Past Due 61-90 days | Past Due over 90 days |
|---|---|---|---|---|---|
| Post-petition | 78,855.54 | 72,277.75 | 3,662.35 | (0.01) | 2,915.45 |

1.  For Accounts Payable **more than 30 days past due,** explain why payment has not been made.
Kernutt, Stokes, Brandt, LLP (CPA firm) balance of $7759.57 requires court approval to pay.
The remainder past due is a credit from Qwest.

2.  Attach the debtor's accounts payable aging report.

### Post-Petition Trade Accounts Payable Reconciliation

| | |
|---|---|
| Opening Balance | 63,403.95 |
| Additions: | 1,993,204.66 |
| Less:  Payments made | (1,977,753.07) |
| Closing Balance | 78,855.54 |

Case Number: | 11-60920-fra11
Report Mo/Yr: | June-11

**Debtor:** | Eugene Pipe LLC

---

**UST-16, BUSINESS STATEMENT OF AGED POST-PETITION PAYABLES**
**PART B - TAXES**

---

**CERTIFICATION:** The undersigned certifies under penalty of perjury that all post-petition taxes required to be withheld or collected have been paid to the appropriate taxing authority or that a deposit for such amounts has been made into a separate bank tax account as more fully described below.

BY: __/s/ Mike Stickel_____    DATE:___7/13/11_____

---

### Reconciliation of Unpaid Post-Petition Taxes

| Type of Tax | 1 Unpaid Post-petition Taxes from Prior Reporting Month | 2 Post-petition Taxes Accrued this Month (New Obligations) | 3 Post-petition Tax Payments Made this Reporting Month | 4 Unpaid Post-petition Taxes at End of Reporting Month (Column 1+2-3=4) |
|---|---|---|---|---|
| **FEDERAL EMPLOYMENT TAXES** | | | | |
| Employee Income Tax Withheld | - | 11,247.18 | (11,247.18) | - |
| FICA/Medicare-Employee | - | 7,587.46 | (7,587.46) | - |
| FICA/Medicare-Employer | - | 10,273.30 | (10,273.30) | - |
| Unemployment (FUTA) | - | 96.99 | (96.99) | - |
| **STATE EMPLOYMENT TAXES** | | | | |
| Employee Income Tax Withheld | - | 7,619.84 | (7,619.84) | - |
| Unemployment (SUTA) | - | 3,606.95 | (3,606.95) | - |
| Worker's Compensation (SAIF and State Fund) | 2,164.64 | 2,177.71 | (2,164.64) | 2,177.71 |
| **OTHER TAXES** | | | | |
| Corporate Income Tax | - | - | - | - |
| Local City/County Tax | - | 890.28 | (890.28) | - |
| Sales Tax | - | - | - | - |
| Personal Property Tax | - | - | - | - |
| Real Property Tax | - | - | - | - |
| WA B&O | 5,068.36 | 3,653.10 | (5,068.36) | 3,653.10 |
| CA LLC fees | | 6,000.00 | (6,000.00) | - |
| Other | - | - | - | - |
| | | | Total Unpaid Post-Petition Taxes | $ 5,830.81 |

---

Is the debtor delinquent in any tax reporting? *If yes,* provide the name of the taxing authority, a description of the report that is past due, the original report due date, any payment due, and the reason for the delinquency.

---

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 11 of 13

(Revised 5/18/10)

Case Number: | 11-60920-fra11
Report Mo/Yr: | June-11

**Debtor:** Eugene Pipe LLC

## UST-17 STATEMENT OF OPERATIONS

INSTRUCTIONS: Answer each question fully and attach additional sheets as necessary to provide a complete response

**Question 1 - Sale of the Debtor's Assets**
Did the debtor, or another party on behalf of the the debtor, sell, transfer, or otherwise dispose of any of the debtor's assets during the reporting month that are out of the ordinary course of the debtor's business **If yes, attach a schedule identifying each asset, date of sale notice, method of disposition, and gross and net sale proceeds received. If real property was sold, attach a copy of the closing statement.**

| Yes | No |
|-----|-----|
| | no |

**Question 2 - Financing**
During the reporting month, did the debtor receive any financing, or loans from a non-insider funding source? **If yes, indicate the source of the funds, date paid to debtor, dollar amount, and date of court approval.**

| Source of Funds | Date Paid | Amount | Date of Court Approval | Yes | No |
|-----------------|-----------|--------|------------------------|-----|-----|
| | | | | | No |

**Question 3 - Insider loans**
During the reporting month, did the debtor receive any funds from an officer, director, partner, member, shareholder, or other insider of the debtor? **If yes, indicate the source of funds, date paid to debtor, dollar amount, and date of court approval.**

| Source of Funds | Date Paid | Amount | Date of Court Approval | Yes | No |
|-----------------|-----------|--------|------------------------|-----|-----|
| | | | | | no |

**Question 4 - Insurance and Bond Coverage**

| | Yes | No |
|---|-----|-----|
| Did the debtor renew or replace any insurance policies during this reporting month? **If yes, attach a certificate of insurance for each renewal or change in coverage.** | | no |
| Were any of the debtor's insurance policies canceled or otherwise terminated for any reason during the reporting month? **If yes, explain.** | | no |
| Were any claims made during this reporting month against the debtor's bond? (Answer "No" if the debtor is not required to have a bond). **If yes, explain.** | | no |

**Question 5 - Significant Events.**
Provide a narrative report of any significant events that may have an effect on the financial condition of the debtor or any events out of the ordinary course of business that are not described elsewhere in this report. Attach separate sheets as necessary.

No significant events, out of the ordinary, to report.

Monthly Operating Report -Corporate or Partnership Debtor

United States Trustee-Oregon

Page 12 of 13

(Revised 5/18/10)

EXHIBIT D - Page 17 of 18
Case 11-60920-fra11    Doc 75    Filed 07/21/11

| | |
|---|---|
| Case Number: | 11-60920-fra11 |
| Report Mo/Yr: | Jun-11 |

**Debtor:** Eugene Pipe LLC

## UST-17, STATEMENT OF OPERATIONS (Continued)

**Question 6 - Case Progress.** Explain what progress the debtor has made during the reporting month toward confirmation of a plan of reorganization.
We continue to work with the SBA on the value of the equipment . In addition we have received approval to extend the date to file the Disclosure Statement and the Plan of Reorganization.

| | Filed ? | Estimated Date To be Filed If not Filed |
|---|---|---|
| Disclosure Statement: | no | 7/26/2011 |
| Plan of Reorganization: | no | 7/26/2011 |

**WHERE TO FILE A MONTHLY OPERATING REPORT:** Local Bankruptcy Rule 2015-2 requires the debtor to file its monthly financial report with the U.S. Bankruptcy Court.

**File the underlineoriginal….(select only one)**

**For a Chapter 11 case filed in Portland, OR:**          **For a Chapter 11 case filed in Eugene, OR:**

United States Bankruptcy Court          United States Bankruptcy Court
1001 SW 5th Avenue, 7th floor           405 East 8th Avenue, Suite 2600
Portland, OR 97204                       Eugene, OR 97401

**CERTIFICATION: The undersigned certifies that copies of this report and supporting documents have been served upon each of the following persons in this case: U.S. Trustee; the chairperson of each official committee of creditors or equity security holders or the attorney(s) for each such committee; the debtor and the debtor's attorney; and the trustee and the trustee's attorney, if applicable.**

BY: /s/ Loren S. Scott, OSB #024502          DATE: 7/15/11

TITLE:  Attorney for DIP

**Send U.S. Trustee's copy to: (select only one)**

**For a Chapter 11 case filed in Portland, OR:**          **For a Chapter 11 case filed in Eugene, OR:**

Office of the United States Trustee          Office of the United States Trustee
620 SW Main Street, Suite 213               405 East 8th Avenue, Suite 1100
Portland, OR 97205                           Eugene, OR 97401

EXHIBIT D - Page 18 of 18
Case 11-60920-fra11    Doc 75    Filed 07/21/11

**EUGENE PIPE LIQUIDATION ANALYSIS**

| Asset Description | Estimated Fair Market Value | Estimated Liquidation Value | Estimated Liquidation Costs Other than Trustee Fee | Secured Claims a. Creditor b. Amount | Net Available to Estate After Liquidation |
|---|---|---|---|---|---|
| Summit Checking Account ending in 1307* | $688,704.00 | $688,704.00 | $ 0.00 | EP Lenders, LLC | $0.00 |
| | | | | $3,100,000.00 | |
| Muhlheim Boyd/The Scott Law Group Retainer | $43,245.50 | $43,245.50 | $ 0.00 | Muhlheim Boyd/The Scott Law Group | $0.00 |
| | | | | $43,245.50 | |
| RS2 Retainer | $5,000.00 | $5,000.00 | $ 0.00 | R2S | $0.00 |
| | | | | $5,000.00 | |
| Professional Fee Fund | $15,000.00 | $15,000.00 | | Estate Professionals | $0.00 |
| | | | | $15,000.00 | |
| Accounts Receivable* | $ 2,492,630.00 | $ 2,492,630.00 | $ 199,410.40 | EP Lenders II, LLC | $0.00 |
| | | | | $ 500,000.00 | |
| | | | | EP Lenders, LLC | |
| | | | | $ 2,411,296.00 | |
| Wear Technology - credit from a return | $ 664.00 | $ 664.00 | $ 99.60 | EP Lenders, LLC | $0.00 |
| | | | | $ 618,076.40 | |
| Inventory* | $1,855,281.00 | $ 927,640.50 | $ 139,146.08 | EP Lenders, LLC | $170,982.43 |
| | | | | $ 617,512.00 | |
| 2001 Hyster Forklift Model #H90XMS | $ 15,000.00 | $ 15,000.00 | $ 2,250.00 | NMHG Financial Services, Inc. | $0.00 |
| | | | | $ 12,163.00 | |
| | | | | EP Lenders II, LLC | |
| | | | | $ 726,398.00 | |
| | | | | EP Lenders, LLC | |
| | | | | $ 0.00 | |
| | | | | Small Business Administration | |
| | | | | $ 1,596,970.00 | |
| Equpment purchased from Hoverter Engineering | $ 80,000.00 | $ 80,000.00 | $ 12,000.00 | Hoverter Engineering, Inc. | $0.00 |
| | | | | $ 81,257.00 | |
| | | | | EP Lenders II, LLC | |
| | | | | $ 725,811.00 | |
| | | | | EP Lenders, LLC | |
| | | | | $ 0.00 | |
| | | | | Small Business Administration | |
| | | | | $ 1,596,970.00 | |
| Machinery, Fixtures, Equipment and Supplies | $ 1,410,000.00 | $ 510,000.00 | $ 76,500.00 | EP Lenders II, LLC | $0.00 |
| | | | | $ 725,811.00 | |
| | | | | EP Lenders, LLC | |
| | | | | $ 0.00 | |
| | | | | Small Business Administration | |
| | | | | $ 1,596,970.00 | |
| Preference Claim | $ 240,000.00 | $ 240,000.00 | $ 19,200.00 | | $220,800.00 |

* From June 2011 Monthly Operating Report

Assumptions:

Estimated Liquidation Costs: Inventory 15% , Equipment 15%, Accounts Receivable 8%, Preference Claim 8%
Estimated Liquidation Values: Inventory 50%, Equipment from appraisal

| | |
|---|---|
| **Total from Above** | **$391,782.43** |
| Current Chapter 11 Administrative Expenses | $700,258.00 |
| Estimated Chapter 11 Professional Claims (after retainers exhausted) | $0.00 |
| Estimated Priority Claims | $9,765.00 |
| **Available to Pay Unsecured Claims** | **$0.00** |

EXHIBIT E - Page 1 of 1

# EP LENDERS II ASSET PURCHASE OFFER
# LETTER OF INTENT

EP Lenders II, LLC is prepared to offer the following for the purchase of all of the assets, both tangible and intangible, of Eugene Pipe, LLC (Debtor), free and clear of all liens, except as outlined herein:

1. Purchase all of the company's assets for the Purchase Price of Four Million Seven Hundred Forty Thousand Dollars ($4,510,000) as set forth below.

2. Purchase Price shall be comprised of the following:

   a. Assume all of the secured debt of EP Lenders, LLC in the amount of $3,100,000 provided that EP Lenders will agree to extend the debt for two years at the rate of 6% with monthly interest payments only;

   b. Credit bid EP Lenders II Secured Debt in the amount of $1,010,000. Such Secured Debt is comprised of the Debtor-in-Possession Financing and the first position lien in equipment and fixtures of Debtor acquired by EP Lenders II from West Coast Bank in the amount of the value of such equipment and fixtures, which is $510,000; and

   c. Cash in the amount of $400,000 (comprised of available cash of the Debtor in which EP Lenders II has a first position lien and, if necessary, additional cash contributions from EP Lenders II not to exceed $205,000) to allow payment to unsecured creditors in the approximate amount of 10% of their allowed claims.

3. EP Lenders II will agree to assume the forklift purchase contract with NMHG Financial.

4. EP Lenders II purchase obligation hereunder would be subject to the following conditions:

   a. EP Lenders II negotiating a lease for the use of the current business premises of Debtor on terms and conditions satisfactory to EP Lenders II in its sole discretion;

   b. If the court orders competitive bidding for the purchase of these assets and EP Lenders II is not the winning bidder, the purchase price must include payment of a breakup fee to EP Lenders II in the amount of $50,000;

   c. Debtor using its best efforts to conduct its business in a reasonable and prudent manner in accordance with past practices, to preserve its existing business organizations and relationships with its employees,

Purchase Offer – Page 1

customers, suppliers, and others with whom it has a business relationship, to preserve and protect its properties, and to conduct its business in compliance with all applicable laws and regulations;

d. Debtor and its members agreeing to a non-compete/non-solicitation agreement reasonably acceptable to the parties;

e. The transaction will be subject to the negotiation and execution of a definitive Purchase Agreement with terms satisfactory to each party. The Purchase Agreement will contain representations, warranties and covenants, conditions, and indemnification provisions customary in transactions of this size and type, and acceptable to the Bankruptcy court;

f. Debtor assigning to EP Lenders II any and all supply agreements to which it is a party; and

g. Consent of the Bankruptcy Court.

5. This letter sets forth the intent of the parties only, is not binding on the parties, and may not be relied on as the basis for a contract by estoppel or be the basis for a claim based on detrimental reliance or any other theory. The parties understand that no party shall be bound until the Purchase Agreement has been negotiated, executed, delivered, and approved by the Members of Debtor, the Members of EP Lenders II, and the Bankruptcy Court.

Dated: _July 13, 2011_

EP Lenders II, LLC

_Alan Evans_

Alan Evans, Managing Member

ACCEPTED:

Eugene Pipe, LLC

By:_____, Managing Member

Dated: _____

# ASSET PURCHASE AGREEMENT

# INTENTIONALLY LEFT BLANK

## (To be added when finalized)

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2011, I served the foregoing DEBTOR'S DISCLOSURE STATEMENT DATED JULY 21, 2011, by depositing in the United States mail at Eugene, Oregon full and complete copies thereof, by first class mail, postage prepaid, addressed to the following:

Appraisal Resource PC
Attn John C Kruzinski ASA
8219 SE 17th Ave #300
Portland, OR 97202

Forrmosa Plastics Corp USA
c/o Jerry Delaney
9 Peach Tree Hill Rd
Livingston, NJ 07039

RS2 Group LLC
c/o Roger R. Robb
2507 Walnut Ridge Dr
Springfield, OR 97477

Warren Barnes CPA
1600 Executive Pkwy #110
Eugene, OR 97401

Multi-Fittings
c/o Louise Platero
50 Valleybrook Dr
Don Mills Ontario
M3B2S9 CANADA

Wildish Industr Devlp Corp
c/o Steven Wildish
P.O. Box 7428
Eugene, OR 97401

Columbia River Carbonates
c/o Bernie Schockelt
P.O. Box 2350
Woodland, WA 98674

OpenRoad Transportation Inc
c/o Holly Bray
P.O. Box 627
Dallas, OR 97338

I hereby certify that on the 21st day of July, 2011, I determined from the United States Bankruptcy Court electronic case filing system that the following parties will be served electronically via ECF:

Donald J Churnside       don@oregonlegalteam.com, melanie@oregonlegalteam.com
Benjamin M Kearney       bkearney@agsprp.com, bdavis@agsprp.com
Suzanne C Pickgrobe      suzanne.pickgrobe@sba.gov, penny.williams@sba.gov
Douglas R Schultz        schultz@gleaveslaw.com, kirsten@gleaveslaw.com
Loren S Scott            ecf@scott-law-group.com
US Trustee, Eugene       USTPRegion18.EG.ECF@usdoj.gov
Douglas R Wilkinson      doug@thorp-purdy.com, skelley@thorp-purdy.com

THE SCOTT LAW GROUP

By:    /s/ Loren S. Scott
       Loren S. Scott, OSB #024502
          Of Attorneys for DIP

CERTIFICATE OF SERVICE - Page 1 of 1