UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE | Bankruptcy Case |
| EUGENE PIPE, LLC, | No. 11-60920-fra11 |
| Debtor. | MEMORANDUM OPINION |

The confirmation hearing in this Chapter 11 case was held on April 25, 2012, at which testimony was heard and evidence submitted. The summary of acceptances and rejections of the Debtor's Second Amended Plan of Liquidation ("Second Amended Plan') disclosed overwhelming acceptance. An objection to confirmation had been filed by creditor Bluegrass Products, LLC ("Bluegrass"), which holds an unsecured claim in the approximate amount of $2,200 and has submitted a rival offer to purchase the Debtor's business. The Court has carefully considered the testimony and other evidence presented and will allow confirmation of Debtor's Second Amended Plan.

## BACKGROUND

Debtor is a limited liability company which has been engaged in the manufacture and sale of PVC pipe since 2008. Shortly after the business was formed, Debtor took out business loans from the Small Business Administration ("SBA") and from West Coast Bank in order to expand operations. With the collapse of the housing and construction industry, Debtor could not sell enough of its product to fully service its debts. Unable to restructure its loans, the Debtor sought private investors. EP Lenders, LLC, made up predominately of members of the Debtor, was formed and provided enough funding to pay down one of the

MEMORANDUM OPINION-1

West Coast Bank loans and provide additional operating capital. When the remaining West Coast Bank loan became due, Debtor was unable to pay it off and a second investor entity, EP Lenders II, LLC, was formed, made up of some of the members of the Debtor and of EP Lenders LLC. EP Lenders II paid off the remainder of the West Coast Bank loan. Debtor was still unable to service its existing debt and filed for relief under chapter 11 on March 4, 2011.

A committee of unsecured creditors was appointed in the bankruptcy and an order was entered allowing the Debtor to use cash collateral during the pendency of the case. A Plan of Reorganization was submitted which provided for the sale of the business to EP Lenders II, LLC and payment to unsecured creditors from the proceeds of sale of 10% of their allowed claims. Bluegrass filed an objection to the accompanying Disclosure Statement in which it argued that the Disclosure Statement was inadequate because it failed to disclose a subsequently submitted term sheet for a purchase of the business by Bluegrass. At a hearing on the Disclosure Statement on September 7, 2011, the Court ordered Debtor to file an amended Disclosure Statement and Plan, which it did on September 28. Bluegrass again objected that the description of its bid to purchase the business was inaccurate. A further hearing on the Disclosure Statement was held on December 16. Bluegrass was given one week to compete its due diligence for its bid to purchase the business and Debtor was ordered to file an amended Disclosure Statement after conferring with counsel for Bluegrass on added language. Objections to the Second Amended Disclosure Statement would be due 14 days thereafter and, if no objections were filed, the Second Amended Disclosure Statement would be conditionally approved.

Debtor filed a Second Amended Disclosure Statement and a Second Amended Plan of Liquidation on February 1, 2012 and, absent any objections, an order was entered on February 23 conditionally approving the Second Amended Disclosure Statement and ordering that ballots be sent out. The Second Amended Disclosure Statement disclosed that Bluegrass had proposed an alternative offer to purchase the business and provided Bluegrass's term sheet as an exhibit showing that it would pay $1,217,000 toward general unsecured claims, which Bluegrass characterized as providing a dividend of 40%.

// // //

MEMORANDUM OPINION-2

On March 1, 2012, Bluegrass filed its own Disclosure Statement and Plan of Reorganization and a motion that both plans be simultaneously considered by creditors and the court. Counsel for Debtor and EP Lenders II, LLC objected that Bluegrass was dilatory in filing its competing plan at the last minute and after ballots for Debtor's plan had already gone out and that it would create an unacceptable delay to the process if additional hearings were required to hear objections to Bluegrass's disclosure statement and a new balloting were required. After considering submissions and argument by interested parties, the Court denied Bluegrass's motion at a hearing held on March 22, 2012. Bluegrass now objects to confirmation of the Debtor's Second Amended Plan of Reorganization.

## DISCUSSION

### A. Confirmation Standards

The requirements for confirmation of a plan in chapter 11 are set forth in 11 U.S.C. § 1129[1]. The court has the affirmative duty to make sure that all applicable requirements for confirmation under § 1129 have been met. In re Ambanc La Mesa Ltd. Partnership, 115 F.3d 650, 653 (9th Cir. 1997). The court will confirm a plan if the plan proponents prove by a preponderance of the evidence either: 1) that all applicable requirements of § 1129(a) have been met, or 2) if the only condition to confirmation that is not satisfied is § 1129(a)(8), that the plan satisfies "cramdown" standards under § 1129(b), i.e. that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan.

### B. Summary of the Second Amended Plan of Liquidation

The Second Amended Plan provides for a sale of the Debtor's business assets shortly after confirmation to EP Lenders II, LLC ("Buyer"). Administrative expenses and priority tax claims will be paid in full on the effective date of the Plan. All secured claims existing at the time of sale will be assumed by the

// // //

---

[1] Unless otherwise stated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

MEMORANDUM OPINION-3

Buyer. The Buyer will also provide cash in the amount of $700,000 in a lump sum at closing to be paid to general unsecured claimants, providing an estimated payment of 32.15% of allowed general unsecured claims.

C. Bluegrass's Objections to Confirmation

Bluegrass concedes that all elements of § 1129 are satisfied except for the Best Interest of Creditors test (§ 1129)(a)(7)) and the requirement that there be adequate disclosure under § 1125, which is applicable to the confirmation analysis through § 1129(a)(3).

1. Best Interest of Creditors Test - 1129(a)(7):

The Best Interest test requires that for each impaired class of claims or interests, each holder of a claim or interest within that class must either: 1) have accepted the plan, or 2) receive or retain under the plan, as of the effective date of the plan, property that is not less than the amount such holder would receive or retain <u>if the debtor were liquidated under Chapter 7</u> on the effective date of the plan.

The analysis under § 1129(a)(7) requires a comparison of the dividend proposed by the Second Amended Plan with the dividend likely to be received by general unsecured creditors in a hypothetical Chapter 7 liquidation. Debtor's liquidation analysis discloses that a sale of the business assets by a Chapter 7 trustee would produce cash in the amount of $277,520 to pay general unsecured creditors, far less than the $700,000 offered pursuant to the Second Amended Plan. Bluegrass accepted Debtor's liquidation analysis in proposing its own plan of reorganization, but argues that the Best Interest analysis in Debtor's plan should take into account Bluegrass's bid. The purchase offer contained in Bluegrass's Plan of Reorganization provides cash in the amount of $980,000 to unsecured creditors ($280,000 more than the Second Amended Plan), which Bluegrass calculates will provide a dividend of 45% to unsecured creditors. Because it is offering more cash to unsecured claimants, it argues that Debtor's plan cannot overcome the Best Interest test.

If Bluegrass had made a competing offer to purchase the Debtor's business as a going-concern and that offer was truly non-contingent and binding on Bluegrass, and the timing and risks of the offer were similar to that of the Debtor's plan, then perhaps the amount to be paid by Bluegrass could be used to calculate the Best Interest amount. However, Bluegrass has not executed an asset purchase agreement and the term sheet is unsigned and non-binding. Moreover, its purchase is contingent on members of the Debtor

MEMORANDUM OPINION-4

personally agreeing to a non-competition agreement and to an indemnification provision. Debtor's members cannot be forced to agree to these provisions by Bluegrass or by a Chapter 7 trustee (who would probably have little incentive to push them in any case). The purchase would also be contingent on agreement of Debtor's landlord to a new lease or an assumption of the existing lease. Debtor also argues that a Chapter 7 liquidation as a going concern would entail additional costs to the estate not accounted for by Bluegrass, such as costs for professionals to run the company and advise the trustee while a sale is pending, and an additional Chapter 7 trustee fee for the sale. These additional costs have not been quantified by Debtor, but have not been addressed by Bluegrass.

I find that the Chapter 7 liquidation amount calculated by Debtor as part of its Best Interest test is reasonable and realistic given the situation as it currently exists. The proposed purchase by Bluegrass is not binding on Bluegrass and, if the Debtor were to find itself in Chapter 7, Bluegrass would be free to obtain Debtor's assets from the estate for whatever a trustee were willing to sell them for (subject of course to approval by the court). The Bluegrass offer is subject to contingencies, some of which may not be overcome. The risks are just too great that Bluegrass's competing offer could not be consummated in a timely manner and for the amounts proposed to use it as a basis for the liquidation amount in the Best Interest test of § 1129(a)(7). Accordingly, I find that the Second Amended Plan meets the provisions of § 1129(a)(7).

2. Good Faith - § 1129(a)(3)

Section 1125 requires that Debtor provide "adequate information" to allow a hypothetical investor typical of the holders of claims or interests in the bankruptcy case to make an informed judgment about the plan. Bluegrass argues that the disclosure made was either inadequate or inaccurate in several respects. I don't agree.

The Disclosure Statement included a term sheet supplied by Bluegrass describing its competing bid. The term sheet and other information in the Disclosure Statement were sufficient to apprise creditors of the existence of a competing bid which would yield a higher dividend to unsecured creditors. While the plan of reorganization submitted by Bluegrass after the Second Amended Plan and Disclosure Statement had gone out and balloting had commenced may have provided slightly more to unsecured creditors, I do not find that the

MEMORANDUM OPINION-5

disclosure made by Debtor was inadequate.  Moreover, while some creditors did not receive prior notice of the final Bluegrass bid, others, including the attorney for the unsecured creditors committee, apparently did.

Another issue was a reference in the Disclosure Statement to the fact that Bluegrass's parent company had been the subject of a hostile takeover by another company.  The statement was, objectively, accurate.  Bluegrass suggests that it is, even so, irrelevant and prejudicial.  It is not irrelevant: creditors, who may also be interested in post-confirmation trade with the Debtor or its successors, may take into account whether a competing bid or plan may result in the closure of a local facility.

I find that Debtor provided adequate disclosure of the Plan to meet the requirements of § 1125 and that the Plan was otherwise proposed in good faith.

## CONCLUSION

Having found that all the requirements of § 1129(a) have been met, it follows that Debtor's Second Amended Plan of Reorganization should be confirmed.  Counsel for Debtor should submit an order of confirmation.

FRANK R. ALLEY, III
Chief Bankruptcy Judge